WILSON BROWN, Sr.,

*v.*

JOSEPHINE BROWN *et al.*

| 167 | 631 |
|-----|-----|
| 179 | 90 |
| 167 | 631 |
| 207 | 112 |

*Filed at Mt. Vernon June 18, 1897—Rehearing denied October 12, 1897.*

1. DEEDS—*recording of deed by grantor is not in itself a delivery.* The recording of a deed by the grantor, without its acceptance by the grantee and without his knowledge or consent, does not of itself constitute a delivery.

2. SAME—*intention is the test of acts relied upon to constitute delivery.* To constitute delivery of a deed it must clearly appear that it was the grantor's intention that his deed should pass title at the time and that he should lose all control over the same.

3. SAME—*what acts do not constitute a delivery.* The execution of a deed by a father to his son, and his recording of the same without his son's knowledge or consent, will not constitute a delivery where the father retains possession of the deed and control of the property, pays the taxes thereon and exacts rent from the son for its use, from the time the deed was executed until the son's death.

APPEAL from the Circuit Court of Johnson county; the Hon. A. K. VICKERS, Judge, presiding.

This was a bill in equity brought by Wilson Brown, Sr., to cancel and set aside as void and a cloud upon complainant's title the record of a deed executed on November 23, 1891, by Wilson Brown, Sr., and his wife, Neacy J. Brown, to Wilson Brown, Jr., purporting to convey the south-west quarter of the north-west quarter of section 7, township 13, range 2, east of the third principal meridian, containing sixty-four acres, situated in Johnson county, Illinois, which deed was recorded in the recorder's office of Johnson county on the 16th day of August, 1892.

The complainant alleged in the bill that for more than forty years last past he has owned and occupied the land with his family and paid all taxes thereon; that he allowed his son, Wilson Brown, Jr., to live with him in the same house on this land; that in consequence of the old age of complainant, and while suffering from a long and severe spell of sickness in the year 1891, fearing his own death and being desirous of settling his property interests before death, negotiated with his said son, Wilson Brown, Jr., for the sale of the tract of land heretofore mentioned and described; that complainant agreed with said Wilson Brown, Jr., that for a cash consideration of $1000, to be paid to complainant in installments, as needed for his support and for the support of his wife, and for the further consideration that the said Wilson Brown, Jr., would maintain complainant and his wife during their lives, upon the death of complainant the title to the said tract of land was to vest in and pass to said Wilson Brown, Jr., it being expressly understood and agreed that no deed was to be delivered to the said Wilson Brown, Jr., until after the death of complainant, and that no title to the said land should pass from complainant until after his death, and not then unless the said Wilson Brown, Jr., should perform his part of the agreement by paying to complainant the said sum of $1000 and keep and maintain complainant and his said

wife so long as they should live.    It is also alleged that complainant caused the deed to be recorded but it was never delivered; that Wilson Brown, Jr., the grantee, died intestate and insolvent September 1, 1893, leaving Josephine Brown, his widow, and Deza Brown and Edna Brown, his only heirs.    The widow and heirs were made defendants to the bill.

The defendants put in an answer to the bill, in which they denied all the material allegations therein contained, and set up that the complainant gave the land to his son, Wilson Brown, Jr., and delivered the deed to him; that the consideration for the deed was natural love and affection.  A replication was filed to the answer, and the cause proceeded to a hearing on the pleadings and the evidence, and the court entered a decree dismissing the bill, to reverse which the complainant appealed.

THOMAS H. SHERIDAN, and D. J. COWAN, for appellant.

WHITNEL & GILLESPIE, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On the hearing the complainant put in evidence a note and an agreement in writing, as follows:

"Two years after date I promise to pay Wilson Brown, Sr., $1000 for value received of him.    This note is given in part payment for south-west quarter of north-west quarter section seven (7), township (13) thirteen, range No. (2) two, east, Johnson county, Illinois, and containing sixty-four acres, more or less.

"Dated this the first day of August, 1892.

                                                WILSON BROWN, JR."

"This agreement, made this first day of August, 1892, between Wilson Brown, Sr., and Wilson Brown, Jr., of county of Johnson and State of Illinois, in and for the consideration of $1000:

"*Witnesseth:* That the said Wilson Brown, Jr., doth agree to take care of Wilson Brown, Sr., and Neacy Brown, my father and mother, so long as they live, and I am to treat them well,

and Wilson Brown, Sr., is to have the control of the farm and Wilson Brown, Jr., is to tend the farm, and Wilson Brown, Sr., is to furnish team, and the proceeds is to be divided half and half, and Wilson Brown, Sr., is to furnish farming tools to work the farm at his own expense. Now, if default be made by Wilson Brown, Jr., I am not to have any part to or in south-west quarter of the north-west quarter of section 7, township 13, range 2, east, in Johnson county, Illinois.

"In witness whereof we have hereunto set our hands and seals year and day above written.      Wilson Brown, Sr.

Wilson Brown, Jr."

The defendants denied that Wilson Brown, Jr., executed the note and the agreement, but a number of witnesses who were acquainted with the handwriting of Wilson Brown, Jr., testified that his signature to the two papers was genuine, while others testified that the signature was not that of Wilson Brown, Jr. The decided preponderance of the evidence, however, was that the signature was genuine. It also appeared from the evidence that Wilson Brown, Jr., lived in one end of the house on the farm and complainant resided in the other; that complainant paid the taxes on the land after the deed was made as he did before; that Wilson Brown, Jr., farmed the land and the crops were divided between the two parties.

Charles L. Davis testified, on behalf of the complainant, that he had a conversation with Wilson Brown, Jr., in the winter of 1892 or spring of 1893 in the wood-lot on the farm, and says: "He told me that his father had made him a deed to the place and that he was to take care of the old man and the old lady their lifetime, and that if he did that, then when they died the place would be his, and that if he failed to take care of them as long as they lived that he was not to have the place." Edward Brown testified as follows: "I have known the farm in controversy forty years. I knew Wilson Brown, Jr., all his life. Shortly before he died I went over to where he was mowing clover on this farm and asked him for a

job, and he told me that he did not know—that I would have to see the old man about that. I asked him if he did not have a deed to the place, and he said that a deed was made to him but that it was not delivered and would not be until he paid for it, and that he owed $1000 for it. This conversation was in June, 1893. I think he died in September, 1893." William F. West testified that in July, 1893, he talked of leasing land of Wilson Brown, Jr.; "he said that he had to stay on the old place and take care of the old folks as long as they lived; that he had to take care of these old folks for the land. He also said that the old man still held the deed in his possession; that he had to take care of the old folks as long as they lived, and when they died he would get the place." Frank Brown testified that in 1892, in a conversation with Wilson Brown, Jr., he said that he had never had the deed to the farm in his possession. J. E. Brown, who resided on an adjoining farm, testified: "I proposed to him (Wilson Brown, Jr.) that we build a division fence, and he said to me: 'You need not come to me about the fence; if you and pap fix it there it is all right with me; it is none of my farm.' I says, 'Haven't you got a deed to the place?' He says, 'Yes; there is a deed made, but I have never had it in my possession.' I says, 'Where is it?' He says, 'Pap has it, and is to hold it as long as he lives.' On another occasion, before the one I have just mentioned and not longer than two weeks before he died, he told me that he had nothing to do with the farm, but to go to pap. I visited the place very frequently. About one month before he died I was over at the place, and while there picked up an atlas and I saw the deed in question in it. Wilson Brown, Sr., owned the atlas. Again on Monday, after Wilson Brown, Jr., was buried on Saturday, I looked in the same book, found the same deed there and read it in the presence of Aunt Sally Brown. The atlas was in the father's room, in the old people's safe." Effie Edwards testified that about two weeks be-

fore Brown died she heard him tell her father that he had never seen the deed to the farm or had it.

There was other evidence of a like character introduced by the complainant. On the other hand, the defendants proved by several witnesses that complainant stated to them, in substance, that he intended to deed the home farm to his son, Wilson Brown. Josephine Brown, the former wife of Wilson Brown, Jr., testified that she was present when the deed was executed, and the old man gave the deed to her husband and he took it and put it away. Rena Carter, a sister of Mrs. Wilson Brown, testified "that she had seen and read the deed; saw it two or three times; it was in little Wilse's trunk; that was in 1893." In rebuttal, the complainant testified that he never delivered the deed to his son, but after it was executed he retained it in his possession. It is true, the deed was placed upon record; but that fact, of itself, does not establish a delivery of the instrument. If a grantor, without the knowledge or assent of the grantee, place a deed on record, that will not constitute a delivery, for the reason the grantee has not assented to receive the deed, and it is well settled that it is essential to the legal operation of the deed that the grantee assents to receive it. Without acceptance on behalf of the grantee there can be no delivery. (*Herbert* v. *Herbert*, Breese, 354; *Kingsbury* v. *Burnside*, 58 Ill. 310; *Maynard* v. *Maynard*, 10 Mass. 458; *Sullivan* v. *Eddy*, 154 Ill. 199.) Here, from all the evidence, it is apparent that the grantor himself placed the deed on record, and after it was recorded he retained the possession and control of the instrument, and if at any time the deed passed out of his possession the act was without his consent, and hence did not affect his rights. *Wormley* v. *Wormley*, 98 Ill. 544.

The contract executed by the father and the son on the first day of August, 1892, shows, in plain language, that it was not intended by the parties that the deed should go into effect and the title vest in the son so long

as Brown and his wife should live. By the terms of
that contract the son agreed to take care of Wilson
Brown, Sr., and his wife, so long as they should live,
and treat them well, and give one-half of what should be
raised on the farm to Wilson Brown, Sr., and if he failed
to perform the contract then he was to have no interest
whatever in the farm in question. The deed was exe-
cuted by Brown and his wife, and held ready to pass into
the possession and control of the son upon their death, in
case he performed the contract as he had agreed, but we
find nothing in the record showing an intention on the
part of the grantor that the deed should go into effect
when it was executed. In *Wilson* v. *Wilson*, 158 Ill. 567,
where the question arose in regard to the delivery of a
deed, it is said (p. 574): "To constitute delivery of a deed
it must clearly appear that it was the intention of the
grantor that the deed should pass the title at the time,
and that he should lose all control over it." In *Weber* v.
*Christen*, 121 Ill. 97, it was held that the test in all cases
is the intent with which the act or acts relied on as the
equivalent for actual delivery was done; that this intent
is to be gathered from the conduct of the parties, par-
ticularly of the grantor, and all the surrounding circum-
stances. Here the grantor remained in the possession and
control of the farm, paid the taxes, required the grantee
to pay rent from year to year, made repairs and kept the
possession of the deed. These various acts show plainly
that the grantor had no intention that the title to the
land should pass to the grantee. Moreover, the acts and
declarations of the grantee tend to show that the deed
had not been delivered and the title to the land had not
passed. He said repeatedly that a deed had been made
but it never had been passed over to him, and the land
would not belong to him while the grantor was alive.
Indeed, there was no disagreement or controversy be-
tween the grantor and grantee in regard to the deed or
the title to the land while the grantee was living.

In conclusion, we are of opinion, from the facts disclosed by the record, that the deed in question was not delivered, and we think complainant was entitled to the relief prayed for in the bill.

The decree will be reversed and the cause remanded, with directions to enter a decree in favor of complainant, as prayed for in his bill.        *Reversed and remanded.*