CHARLES DAVIS, Appellee, v. JOHN E. BROWN COLLEGE OF SILOAM SPRINGS, ARKANSAS, Appellant, et al., Appellee.

No. 39271.

JANUARY 8, 1929.

REHEARING DENIED JUNE 24, 1929.

*A. L. Smith* and *Utterback, Forrest & Robinson,* for appellant.

*Stewart & Hextell,* for Charles Davis, appellee.

*A. M. Miller,* for Capital City State Bank, appellee.

FAVILLE, J.—I.   This action involves 60 acres of land, the title to which stood in Sarah E. Davis, a widow.   Plaintiff is the adopted son of said Sarah, and is residuary legatee under her will.   The defendant the Capital City State Bank is executor of the will of said Sarah E. Davis, and is made a party to this action.   We refer to the plaintiff as though he were the sole appellee, and to the John E. Brown College as the appellant.

On the 19th day of February, 1925, Sarah E. Davis executed three deeds, one being the deed in controversy in this action, in which the defendant the John E. Brown College is named as grantee.   Another deed conveyed 20 acres of land to the plaintiff, and a third conveyed 30 acres of land to the Boone Biblical College.   At the date of the execution of said deeds, the grantor, Mrs. Davis, signed a written instrument known in the record as Exhibit G, which is as follows:

"Des Moines, Iowa
"February 19, 1925.

"Capital City Bank,
"Des Moines, Iowa:   You will in case of my decease only deliver the enclosed deeds to the persons to whom the land described in said deeds is conveyed.

"And Oblige Yours Resp.
"Sarah E. Davis."

It is contended by the appellant that the deed in controversy was delivered to the Capital City State Bank on or about the

said 19th day of February, 1925, which is the date upon which said deed was executed and acknowledged, and upon which said letter was written. We do not find sufficient evidence in the record to sustain the contention of the appellant that the deed in controversy was in fact placed in the hands of the said Capital City State Bank on or about the said 19th day of February, 1925, or that the said letter, Exhibit G, was delivered to said bank with the said deed at said time. The evidence at this point rests chiefly on inferences which appellant seeks to draw from the circumstances surrounding the transaction; but the record as a whole fails to disclose that the deed was delivered to the said bank on or about the said 19th day of February, 1925, or at any time prior to August 20, 1925; and there is a failure to establish that the said deed was delivered to said bank under the instructions contained in said letter, Exhibit G.

II. On or about the 27th day of July, 1925, the decedent executed certain other deeds, and the evidence tends to show, and is sufficient to sustain the conclusion, that the deed in question was delivered to said bank at said time, with said other deeds executed by the decedent. All of the deeds were placed in an envelope and retained in the custody of said bank until after the decease of the grantor. At the time of the delivery of said deeds to said bank, the grantor also delivered to the bank a written instrument, to which the cashier of the bank attached his receipt, said written instrument being as follows:

'' Des Moines, Iowa

"July 27, 1925.

"This certifies that I have left with the Capital City State Bank, Deeds to certain real estate, now owned by me and described therein, which deeds are to be held by said Bank as Trustee for the Grantees named in said deeds and to be delivered to the Grantees named in said deeds only in case of my decease. Said deeds to be returned to me on demand by me, otherwise to be delivered to said Grantees.

"Sarah E. Davis.

"The Capital City State Bank hereby acknowledges the receipt of said deeds, subject to the above.

"Aug. 20, 1925.                    Will A. Luge,

"Cashier."

The delivery of this instrument and the deeds and the execution of the receipt were on or about the 20th day of August, 1925. Shortly thereafter, the grantor removed to the state of California, where she died, in July, 1927, leaving the said deeds still in the custody of said bank, and without attempting to recall them.

The record has taken a wide range, much oral evidence being introduced with regard to declarations of the decedent. The ultimate decision of the case, however, involves but one question: namely, as to whether or not there was a delivery of the deed in controversy which passed the title to the appellant. Construing the instrument dated July 27, 1925, under which we find from the record that the deed in question was deposited with the bank, it was a specific direction to the depositary that the said deed was to be delivered to the grantee named in said deed in the event of the death of the grantor; but by said instrument the grantor retained the power of recall by the provision "Said deeds to be returned to me on demand by me." Said power of recall, however, was not exercised by the grantor during her lifetime. Under such a state of facts, was there delivery of the deed?

It is a well established rule that delivery of a deed to a third party, to be held by the third party and delivered to the grantee upon the death of the grantor, there being no limitations or reservations as to such delivery, constitutes a good delivery to the grantee. *Hinson v. Bailey*, 73 Iowa 544; *Trask v. Trask*, 90 Iowa 318; *Denzler v. Rieckhoff*, 97 Iowa 75; *White v. Watts*, 118 Iowa 549; *Foreman v. Archer*, 130 Iowa 49; *Schillinger v. Bawek*, 135 Iowa 131; *Kneeland v. Cowperthwaite*, 138 Iowa 193; *Matheson v. Matheson*, 139 Iowa 511; *Kyle v. Kyle*, 175 Iowa 734; *Goodman v. Andrews*, 203 Iowa 979.

In the instant case, the right to recall the deed upon demand of the grantor was expressly reserved in the written instrument under which said deed was left with the depositary. Does such reservation defeat delivery when not exercised?

It is undoubtedly true that the weight of authority in this country sustains the general rule that, where the power to recall a deed deposited with a third party is reserved to the grantor, there is no effectual delivery, and the deed cannot take effect. See 18 Corpus Juris 210 and many cases cited. This is obviously true where the right to recall is exercised by the grantor. In 18 Corpus Juris 210, it is also stated:

"* * * in a few cases, a power upon the part of the grantor to recall the deed has been held not to invalidate the delivery, where such power was not exercised during the lifetime of the grantor."

This statement of the text is supported by citations to three cases: *Henry v. Phillips,* 105 Tex. 459 (151 S. W. 533); and two cases from this court,—*Newton v. Bealer,* 41 Iowa 334, and *Lippold v. Lippold,* 112 Iowa 134. It is upon this exception that appellant relies.

A brief review of some of our cases seems essential at this point. In *Newton v. Bealer,* supra, there was no delivery whatever to a third party as custodian.

In that case the grantor executed a deed, naming a minor son as grantee, and placed the deed in a chest in the grantor's room. Four or five days before his death, the grantor said, to a son not the grantee, pointing to the chest: "After I am gone, the deed and will will be found in that chest." A few hours after grantor's death, the deed was so found, and subsequently delivered to the grantee. We held that the intent of the testator was to pass title, and that there was a valid delivery. In the course of the opinion, we said:

"Where one who has the mental power to alter his intention, and the physical power to destroy a deed in his possession, dies without doing either, there is, it seems to us, but little reason for saying that his deed shall be inoperative simply because during life he might have done that which he did not do. It is much more consonant with reason to determine the effect of the deed by the intention existing up to the time of death than to refuse to give it that effect because the intention might have been changed."

We have recognized the rule that, not only in the case of a dependent minor child, but even as to one not so situated, the execution of a deed and placing the same in the grantor's own box or other receptacle, and wholly under his control until his death, constitutes a good delivery where there was evidence showing that such was the intent of the grantor. *McKemey v. Ketchum,* 188 Iowa 1081; *Tallman v. Cooke,* 39 Iowa 402; *Foley v. Howard,* 8 Iowa 56, 60; *Stow v. Miller,* 16 Iowa 460, 463. See,

also, *Foreman v. Archer*, 130 Iowa 49, at 55. In *McKemey v. Ketchum,* supra, we said:

"The authorities are overwhelmingly opposed to the argument that the keeping of physical control of the paper by the grantor is conclusive against delivery. It has been ruled many times that an effective delivery of a deed is not negatived because it remained in the physical power of grantor to retake the deed, or because he retained mental power to alter his intentions. * * * Where one had the mental power to alter his intention and the physical power to destroy a deed in his possession, and dies without doing either, there is but little reason for saying that this deed shall be inoperative simply because, during life, he might have done that which he did not do. It is much more consonant with reason to determine the effect of the deed by the intention existing up to the time of death than to refuse to give it that effect because the intention might have been changed. * * * We hold that the decree cannot be sustained merely because grantor kept the deed in his own box, and retained the power to destroy the deed—a power which he did not exercise. We recur to the point that all required is evidence that grantor intended to pass title."

In the foregoing cases, the deed was in the custody of the grantor or under his immediate control.

Let us consider some of the cases where the deed was lodged with a depositary.

In *Lippold v. Lippold,* 112 Iowa 134, the grantor went with his minor son, the grantee, to a notary public, and, after some discussion, a warranty deed was drawn and executed by the grantor, conveying the land in controversy to said son. The grantor, the notary, and the grantee went together to a bank, and delivered the deed to the cashier, the notary testifying:

"If I remember right, it was said that in case of death the deed should be delivered to George Lippold and G. Deiderich [the notary]."

At that time, a memorandum was written by the banker on the envelope in which the deed was placed, and the same was left in the bank. The cashier of the bank, who conducted the transaction, testified that the deed was delivered to him, and that he

made the indorsement upon the envelope and read it over to the grantor and translated it to him in German, and that he said that was the way he wished to leave it. The indorsement upon the envelope was as follows:

"Deed of William Lippold, to be delivered to William Lippold [grantor], or, in case of his death, to George Lippold and George Deiderich."

After the death of the grantor, the deed was delivered to the grantee named therein. There is a large amount of evidence in the record in that case showing declarations by the grantor to the effect that he had executed the deed in question for the benefit of the grantee, George, and that the latter was to have the property after his death. We held that, upon the entire record, the evidence was satisfactory that the execution and delivery of the deed to the depositary, with instructions to deliver to the grantee upon the death of the grantor, were established as a complete delivery, and intended as such by the grantor, notwithstanding the indorsement made by the banker upon the envelope inclosing the deed. In the opinion in that case we said:

"It is true that the cashier who received the deed made a memorandum on the envelope in which it was placed, to the effect that the deed was to be delivered to William Lippold, or in case of his death, to George Lippold and George Deiderich; but the other evidence shows, without apparent conflict, that he executed the instrument with the intention of passing title to his son. True, he had power to recall the instrument during his life, but this he never exercised, and his death took away the power."

In *Trask v. Trask,* 90 Iowa 318, the grantor executed a deed of property to his son and deposited the same with a bank cashier. It does not appear that there were any specific instructions given the cashier. It was manually delivered to grantee after the grantor's death. In the opinion we said:

"It is well settled, and may be said to be an established rule, that a deed may be delivered to a third person for the grantee, and, if subsequently assented to by the grantee, it will be as good a delivery as if made directly to the grantee. But a delivery of a

deed to a stranger, to be delivered to the grantee at the direction of the grantor, or with a reservation of the right in the grantor to countermand it, does not pass the title. A delivery to a third person does not authorize a presumption that it is done with the intention of passing the title. The facts and circumstances attending the transaction must be such as to show that the grantor intended that the deed should be delivered by the custodian to the grantee. Every such case must be determined by the intention of the grantor. * * * The facts attending the delivery to a third person which may pass the title to the grantee are not required to be such as that it is beyond the mental power of the grantor to alter his intention, or that he has not the physical power to regain possession of the deed. *Newton v. Bealer,* 41 Iowa 334. As we have seen, the intention of the grantor is the polar star by which courts must be guided in determining the question.''

In *White v. Watts,* 118 Iowa 549, a deed was deposited with a third party, without any reservation of the right to recall. We held that there was a good delivery, but, in the course of the argument in the opinion, said:

''* * * to be effective, such deposit must be made without any reserved right or power in the grantor to control the deed or prevent its delivery upon his death. * * * This may well be conceded to be the law, though the fact that it may be within the manual or physical power of the grantor to regain possession of the deed, or that it may be within his mental power to alter his intention, will not necessarily defeat the conveyance. *Trask v. Trask,* supra [90 Iowa 318]; *Newton v. Bealer,* 41 Iowa 334; *Schrugham v. Wood,* 15 Wend. 545 (30 Am. Dec. 75); *Sneathen v. Sneathen,* 104 Mo. 201 (16 S. W. Rep. 497, 24 Am. St. Rep. 326).''

In *Albrecht v. Albrecht,* 121 Iowa 521, the grantor executed a deed and turned the same over to a justice of the peace, with the statement that the justice should keep it until the grantor was dead, and then deliver it to the grantee. A few days afterwards, the grantor became dissatisfied, and withdrew the original deed from the hands of the justice, and destroyed it, and substituted a trust deed therefor with the justice, with instructions that it be

held by him until the death of the grantor, and then delivered, and without any reservation of control. We said:

"The whole matter, as we view it, is one of intent on the part of the grantor. The manner of reserving control over the deed is material in arriving at this intent; for, where a deed is delivered with an express reservation of the right of recall under certain conditions, there is an evident purpose on the part of the grantor not to make it presently effective as a conveyance. But the mere physical power of recall, or the presence of mental power to alter his intention, sheds no light on the question of intent when the deed is delivered. Neither does the understanding of the depositary, nor the construction he places upon the language used when the instrument is delivered to him, afford any evidence on the question of intent. The deed must be delivered, it is true, without any reservation of control; for such reservation clearly negatives an intent on the part of the grantor to pass a present estate, and if subject to reservation, no estate passes. But mere physical or mental power of change is not regarded as of any probative force in solving the question of delivery."

We held that there was a good delivery of the trust deed.

In *Lathrop v. Knoop*, 202 Iowa 621, a deed was executed by the grantor with the name of the grantee blank. At the request of the grantor, the notary wrote the names of two parties with a lead pencil in the deed as grantees. In this condition the deed was placed in the safety box of the grantor. At said time, the grantor said to the notary that she did not wish to spoil the deeds, and that, if either of the parties named as grantees should die, the deed would not be what she wanted to do, and the penciled writing could be erased. Attached to the deed was a memorandum authorizing the executor to fill the blank spaces and penciling with pen and ink, after the death of the grantor, and to deliver the deeds. She left the keys to the safety box in the hands of the notary, who retained them until after her death, when he removed the deed, with the note appended thereto, and delivered it to the administrator. We held that it was apparent that the grantor did not intend to pass a present title to the grantees whose names were inserted in the deed in lead pencil, and that she contemplated changing the name or names of the grantees. We

held that, under the facts of said case, title did not pass to the said grantees.

We have not attempted to review all of the authorities. In many of the cases wherein we have held that the delivery of the deed to a third party, with instructions to deliver it to a named grantee after the death of the grantor, was a good delivery, we have referred to the fact that such placing of the deed in the hands of the depositary was "without any power of recall," or "without any reservation of the right to recall." But these cases are not determinative of the question of delivery where the right of recall is reserved, but not executed.

Where a man executes a deed and places it in his own safety box, or in a satchel or chest in his room, and where it is wholly under his control, to destroy if he sees fit, and he does not do so, we have held that, where extrinsic evidence discloses an intent to deliver, such a situation constitutes a legal delivery of the instrument to the grantee named. Logically, there seems to be no escape from the conclusion that, if such a grantor, instead of placing the deed in his own box and under his immediate control places it in the hands of a third party, reserving the right to recall it, but fails to do so, and the extrinsic evidence shows an intention that the title should pass under the deed unless it was so recalled, this also constitutes a good delivery. In either case, the grantor has the right and the physical ability to destroy the instrument, and if delivery is good in one instance, it would appear to be good in the other. In the case at bar, the grantor placed the deed, with others, in the custody of the cashier of the bank. She expressed an intention that the deeds should be delivered unless recalled by her during her lifetime. She did not so recall them, although she had the power so to do. Had she exercised such power, there would, of course, have been no delivery. But logically, we see no escape from the conclusion that, under the rule heretofore announced in this state, the delivery of the deed to the depositary, with intent that it shall be delivered by the depositary to the grantee named, unless recalled by the grantor, and where the grantor failed to exercise such power of recall or to revoke the power vested in the depositary, and did not evidence an intent contrary to the original one under which the deed was deposited with the custodian, and where the latter, upon the

death of the grantor, delivered the deed to the grantee, there was a valid delivery of the instrument.

It may be that the rule announced herein is contrary to the weight of authority in the country, but it is a rule of long standing in this state, and is consistent with our previous cases. We are not disposed to depart from it at this time. The decree of the trial court must be, and it is,—*Reversed.*

ALBERT, C. J., and EVANS, STEVENS, KINDIG, and WAGNER, JJ., concur.