CARNAHAN et al., Respondents, v. GUPTON et al., Appellants.

(No. 7,878.)

(Submitted September 29, 1939. Decided November 3, 1939.)

[96 Pac. (2d) 513.]

*Mr. D. L. O'Hern* and *Mr. P. F. Leonard* for Appellant, submitted an original and a reply brief; *Mr. Leonard* argued the cause orally.

246

*Mr. Denzil R. Young* and *Mr. George W. Farr,* for Respondents, submitted a brief; *Mr. Farr* argued the cause orally.

HONORABLE FRANK P. LEIPER, District Judge, sitting by consent of both parties, delivered the opinion of the court.

On October 29, 1935, George S. Gupton died intestate at Miles City, Custer County, Montana. He sometimes signed his

name G. S. Gupton, and was also known as Steve Gupton. James Clayton Gupton was a brother of George S. Gupton and resided at Gillette, Wyoming. E. S. Gupton is the son of James Clayton Gupton. Involved in this controversy are five sections of land situated within Fallon County, Montana. These lands were acquired by the two Gupton brothers about 1916, and thereafter each owned an undivided one-half interest therein.

On July 5, 1930, James Clayton Gupton and his wife conveyed to G. S. Gupton all of their right, title, and interest in and to the lands involved herein. This transfer was accomplished by giving six separate deeds. The grantee therein recorded these six deeds and thus became and remained the record owner of the lands in question until the time of his death. At the same time, G. S. Gupton executed and delivered to James Clayton Gupton a deed conveying to the latter an undivided one-half interest in and to the lands in question. This deed was not recorded. James Clayton Gupton died August 29, 1930.

On February 8, 1932, G. S. Gupton made and executed five warranty deeds purporting to convey to E. S. Gupton and his wife all of the five sections of land in question. On the same date G. S. Gupton put these five deeds in a sealed envelope, addressed that envelope to the grantees named in the deeds, and placed the envelope in his safety deposit box in the Bank of Miles City, at Miles City, Montana. At the same time G. S. Gupton mailed a letter to E. S. Gupton, one of the grantees in the above-mentioned five deeds, which letter is as follows:

"Miles City Mont Feb. 8, 1932.

"Mr. E. S. Gupton.

"Gillette Wyo.

"Dear Sir;

"I have today placed in the Bank of Miles-City. At Miles City. Mont. in lock box Number 1210. a sealed Envelope Addressed to E. S. Gupton. Gillette Wyo. Deeds to Sec. 9. sec. 7. sec. 11. sec. 5. sec. 19. all in T. 9. N. R. 57. E.  In fallon

County Mont. made in your favor. and at my death and when notified of my death. present this letter to the Bank of Miles City at Miles City Mont and same will be delivered to you.

"Yours truly.

"GSG                                                              (s)    G. S. GUPTON"

That letter was received by E. S. Gupton. The envelope containing the five deeds remained in G. S. Gupton's safety deposit box until after his death. He alone had access to that safety deposit box. After the death of G. S. Gupton the deeds in question were turned over to E. S. Gupton by the administrator of G. S. Gupton's estate and placed of record by E. S. Gupton.

Other material facts will be mentioned in connection with the discussion of the points involved.

The cause was tried to the court without a jury. The trial court made its findings in effect that G. S. Gupton did not intend that the five deeds in question "should take effect or be delivered to the defendant, E. S. Gupton, until after the death of the said George S. Gupton; but that the said George S. Gupton should be and remain the owner of an undivided one-half interest in said real estate so long as he lived, and that said deeds were retained by the said George S. Gupton in his possession and were not delivered to or intended to be delivered to the defendant, E. S. Gupton, or Mary Gupton, his wife, during the lifetime of the said George S. Gupton." The court further found that E. S. Gupton and Mary Gupton obtained possession of these deeds without right.

From such findings of fact the court drew its conclusions of law, in so far as material here, as follows: "That there was no delivery either actual or constructive of the five deeds from George S. Gupton to E. S. Gupton and Mary Gupton; * * * and that said deeds were revoked and were rendered null and void by the death of the grantor, G. S. Gupton, prior to delivery, and are of no force and effect."

The five deeds thus referred to are the deeds executed by G. S. Gupton on February 8, 1932, and hereinbefore mentioned.

The court further found that the administrator of the estate of G. S. Gupton refused "to become a party-plaintiff in this

action, and for that reason the plaintiffs herein, who are some of the heirs at law of George S. Gupton, deceased, are prosecuting said action for themselves and all other heirs at law of said deceased, and for the benefit of the estate of said deceased";

Judgment was rendered and entered accordingly. This appeal is from that judgment.

While numerous errors are assigned, appellant's counsel concede that all of these may be considered together. Counsel for the respective parties seem to be in agreement that the decisive question here is whether the five deeds executed by G. S. Gupton as grantor on February 8, 1932, to E. S. Gupton and his wife as grantees, were delivered; or whether these deeds are ineffective because of non-delivery as held by the trial judge. The question is stated by counsel for respondents in another way, in substance, thus: Did these five deeds vest any title to any of the lands in question in E. S. Gupton and Mary Gupton?

All of the multitude of cases in which this question has been considered agree that there must be a delivery of a deed in order to vest title. Our section 6843, Revised Codes of 1935, provides: "A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor."

Delivery may likewise be made by placing the deed in escrow, for section 6846, Revised Codes of 1935, provides: "A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and, on delivery by the depositary, it will take effect. While in the possession of the third person, and subject to condition, it is called an escrow."

Actual manual delivery is not essential and constructive delivery is sufficient, for section 6848, Revised Codes of 1935, provides:

"Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

"1. Where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and

under such circumstances that the grantee is entitled to immediate delivery; or,

"2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed."

It may be noted that section 1059 of the Civil Code of California is identical with our section 6848, supra, and because of the similarity in our statutes, the decisions of California are peculiarly applicable here.

While all of the authorities agree that delivery is a prerequisite to the vesting of title in the grantee, there is some divergence of opinion as to what constitutes delivery. After a careful consideration of all of the authorities cited by counsel, as well as of other authorities, we conclude that the better rule and that sustained by the great weight of authority, is as announced by this court in the case of *Springhorn* v. *Springer*, 75 Mont. 294, 243 Pac. 803, 804: "While delivery may be by either words or acts, or both combined, and actual, manual handing over of the deed to the grantee by the grantor is not required, it is settled that delivery is not complete until the grantor has so dealt with the instrument as a means of divesting his title as to lose all control over it and place it beyond the right of recall. It is required that the grantor shall unequivocally indicate it to be his intention that the instrument shall take effect as a conveyance of property in order to have it produce that result. (*Hibberd* v. *Smith*, 67 Cal. 547, 4 Pac. 473, 8 Pac. 46, 56 Am. Rep. 726; *Fain* v. *Smith*, 14 Or. 82, 12 Pac. 365, 58 Am. Rep. 281.)"

A careful consideration of the undisputed facts here impels us to the conclusion that these fall far short of meeting those requirements. These facts disclose that after the execution of these deeds, the grantor placed them in an envelope which he sealed and addressed to the grantees. At the same time he wrote the letter hereinbefore quoted. On the same day, or about that time, he took this envelope, together with the letter, or a copy of it, to the Bank of Miles City, and there had a talk with a Mr. Flinn, an officer of that bank. Flinn read the letter and then said, in substance, to the grantor: "Steve, if

anything happens to you we have no authority to enter that box and deliver those papers to anyone else. What you should do is authorize someone else to have access to that box." To this Gupton replied: "That's all right. My nephew has a letter." The grantor then placed the envelope in his safety deposit box. No one had access to that box at that time, or at any other time during the lifetime of G. S. Gupton, except the grantor himself. The bank did not have access to it. In other words, that safety deposit box was under the absolute and exclusive control of the grantor, and that condition continued so long as the grantor remained alive. The deeds in question did not come into the possession of the grantees, or either of them, until after the grantor's death. From 1930 until the time of his death the lands were assessed to G. S. Gupton. After he had placed these deeds in the lock box he continued to operate the lands in question so long as he remained alive, in precisely the same manner as he had theretofore done.

From the time of the purchase of these lands in 1916 until the time of his death, they were under the sole and exclusive management of G. S. Gupton. He rented portions of them, and looked after the farming of other parts of the land during all of these years. From 1916 until the time of his brother's death in 1930, G. S. Gupton annually rendered an accounting to his brother showing therein all of the expense incident to the operation of these lands for the given year, as well as all of the receipts from them during the same period. If a profit were shown, then G. S. Gupton remitted to his brother one-half of such profit. On the other hand, if during the time covered by that report there was a loss, that was shown and the brother remitted the one-half of that loss to G. S. Gupton. As above noted, subsequent to the death of James Clayton Gupton, E. S. Gupton was appointed administrator of his estate and G. S. Gupton made to such administrator precisely the same accounting that he had made to his brother, and settlement was made in precisely the same manner as was done during the lifetime of James Clayton Gupton. In other words, if there was a profit from the lands, one-half of the profit was sent to the admin-

istrator. If there was a loss, the administrator remitted to G. S. Gupton the one-half of that loss. This arrangement continued until the death of G. S. Gupton. After G. S. Gupton placed these deeds in the safety deposit box, he continued to manage all of the lands in question, to operate the same, and to account for the proceeds thereof in precisely the same manner as he had theretofore done. After these deeds were deposited in the lock box, G. S. Gupton made the same accounting as before; retained one-half of the profits as before; sustained one-half of the loss, if there were a loss, as before; and in all respects dealt with the land in the same manner as before the depositing of these deeds in the safety deposit box, and E. S. Gupton acquiesced in that arrangement. It is evident, from all of this, that both G. S. Gupton and his nephew considered, after the deposit of these deeds, that G. S. Gupton was the owner of a one-half interest in these lands, the same as he was before such deposit was made.

The appellant here relies upon the case of *Martin* v. *Flaharty*, 13 Mont. 96, 32 Pac. 287, 40 Am. St. Rep. 415, 19 L. R. A. 242, and, as well, upon the case of *Plymale* v. *Keene*, 76 Mont. 403, 247 Pac. 554; but in both of these cases the deed was deposited with a third person—a bank—to be delivered upon the happening of certain events. In both of these cases this court held the delivery was a valid constructive delivery and that a deed, when committed to a third person to be delivered to the grantee upon the happening of a future event, is the deed of the grantor presently, and that the third person is a trustee of it for the benefit of the grantee.

In the *Plymale Case* this court cites with approval the case of *Jackson* v. *Jackson*, 67 Or. 44, 135 Pac. 201, Ann. Cas. 1915C, 373, and quotes with approval from the case of *Seeley* v. *Curts*, 180 Ala. 445, 65 So. 807, Ann. Cas. 1915C, 381: "A grantor may deliver a deed to a third person, to hold until the grantor's death, and then to deliver it to the grantee. Such a delivery is perfectly valid; but the deed must be left with the depositary without a reservation by the grantor, express or implied, of the right to retake it or otherwise control its use."

In the *Plymale Case* this court quoted with approval from the case of *Foster* v. *Mansfield,* 3 Met. (Mass.) 412, 37 Am. Dec. 154, in which it is said, in substance, that a deed delivered to a third person as depositary will not take effect as a deed until the second delivery, but when thus delivered it will take effect by relation from the first delivery.

In the *Martin Case* above, this court cited with approval the case of *Wheelright* v. *Wheelright,* 2 Mass. 447, 3 Am. Dec. 66, in which it is said: "If the grantor deliver any writing as his deed to a third person, to be delivered over by him to the grantee, on some future event, it is the grantor's deed presently, and the third person is a trustee of it for the grantee." (*Boicelli* v. *Giannini,* 65 Cal. App. 601, 224 Pac. 777.)

It is worthy of note that this court, in the *Martin Case,* therein collected many decisions of the courts of various states and in that connection says: "Many of the authorities cited in this opinion have been so cited, not that we deemed it necessary to a determination of the case at bar, but more for the purpose of showing the trend of the authorities, and the extent to which they go in support of the doctrine discussed in this case. Some of these authorities go further than perhaps this court would go under like circumstances; but they all support the position we take,—that in the case at bar there was a valid delivery of the deed. The acts, words, and conduct of the parties,—especially the giving of the lease to the demanded premises by the grantees of the deed to the grantor contemporaneously with the execution of the deed, and her occupying the premises under said lease until her death,—established beyond controversy that the parties considered the deed complete, as well as the delivery thereof."

But neither the decision in the *Martin Case* nor that in the *Plymale Case* is applicable here because in this case there was no delivery "to a stranger for the benefit of the grantee," as provided by the second paragraph of section 6848, supra.

Counsel for appellants also cite the following cases as supporting their contentions here: *Steuerwald* v. *Steuerwald,* 195 Wis. 589, 219 N. W. 426, 427, and *Longley* v. *Brooks,* (Cal. Sup.)

92 Pac. (2d) 394. An examination of those cases reveals that an altogether different fact situation existed in each of them. In the former the mother was the grantor and the son, Fred, the grantee. In 1914 the mother was living in California, where she drew the deeds in question and sent them to a bank in South Dakota. At that time she wrote her son, telling him that she had deeded him the property and had placed the deeds in a bank at Wolsey, South Dakota. In 1921 the mother and son went to this bank, obtained the deeds in question, and the banker testified that the mother handed these deeds to her son, saying: "Here they are Fred." Whereupon the son took the deeds and later placed them back in his mother's deposit box, saying: "We will just put them back in the box, mother." Both the mother and son had a key to this box.

In the *Longley Case* the evidence disclosed that there was an actual delivery of the deed in question to the grantee by the grantor, and the other facts and circumstances indicated an intention on the part of the grantor to then transfer the property described in the deed to the grantee therein. The trial court so found.

So that in each of these cases there was an actual delivery of the deeds in question by the grantor to the grantee, and as well, the evidence disclosed many facts which proved clearly that it was the intention of the grantor in each case to part with the title to the premises at the time of the execution of the deeds.

Counsel for appellants also cite the case of *Hitch* v. *Hitch,* 24 Cal. App. (2d) 291, 74 Pac. (2d) 1098, 1099. There the grantor transferred real property to the grantee and sent the deed to the recording officer with directions to record it and thereafter to send such recorded deed to the grantee. The receipt for the deed given by the recording officer to the grantor was sent by the latter to the grantee. The deed reserved to the grantor a life interest in the property conveyed. The grantor further promised to pay the taxes during his lifetime, saying: "The property remains mine until my death so there will be no expense to you until after my demise."

The court there says: ''The real question before us is whether under these general rules there is substantial evidence in this record to overcome the evidence and presumptions in favor of the validity of this deed and to support the finding *that this grantor intended to retain title to this property so long as he lived.''* (Emphasis ours.)

That court further says: ''We have here clear and distinct evidence, which cannot be disputed, that this deed was recorded and actually delivered to the appellant, facts which ordinarily indicate a full and complete delivery. If any doubt as to the intention of the grantor at the time the deed was recorded and ordered sent to the appellant arises from the letters he wrote to her at that time, that doubt is removed and the matter clarified by the reservation made in the deed which clearly discloses the intention of the grantor. If he did not intend the deed to take effect until his death there was no possible reason for reserving a life estate. That part of the instrument should be given effect, and it could have none if the grantor was divesting himself of no part of the title prior to his death. The deed contains within itself rather complete proof of a specific intention to make a present conveyance subject to a life estate which was reserved. To allow any other conclusion to be drawn from the acts of the grantor would be to ignore and annul this definite provision of the deed.''

Thus it will be seen that the facts there are altogether different from those in the instant case. Counsel for appellants here assert that the five deeds, together with the letter hereinabove set forth, written by G. S. Gupton to E. S. Gupton, should be considered together; and that when so considered they show that it was the intention of the parties here to retain in the grantor a life estate in the property in question.

Considering the five deeds and the letter in question as constituting one transaction, counsel's contention may not be sustained for the reasons, (a) the deeds and letter do not constitute a contract; (b) the letter discloses no intent to convey immediate title, with or without reservation of a life estate; and (c) the

reservation in the grantor of a life estate presupposes a conveyance of the property in which the life estate is reserved; but here there was not any transfer or conveyance of any interest in the property in question because the deeds were not intended to be delivered and they were not delivered at any time, or at all, during the lifetime of the grantor, and there cannot be any delivery after death.

Was there a constructive delivery as the same is defined in ██ paragraph one of section 6848? Was there an agreement between the grantor and the grantees at the time of the execution of these five deeds that they were to be then delivered? Were the circumstances such that the grantees named in those five deeds were then entitled to immediate delivery? The facts here compel a negative answer. True, the grantor wrote to one of the grantees saying, in substance, that these deeds would be delivered to him after the death of the grantor; but there can be no delivery of a deed after death, for a dead man is not capable of any activity. (*Jones* v. *Jones*, 6 Conn. 111, 16 Am. Dec. 35, and note; *Hayes* v. *Moffatt*, 83 Mont. 214, 271 Pac. 433.) There is no evidence which warrants the conclusion that the grantees were entitled to immediate possession. The dealings by the grantor with the lands in question after depositing these deeds in the deposit box, and his dealings in connection with these lands with E. S. Gupton, furnish abundant proof that the grantees were not entitled to immediate delivery. All of the dealings of the grantor with these lands indicate that he occupied the same position in relation thereto after depositing these deeds in his safety deposit box as he did before.

The supreme court of California, in the case of *Hotaling* ██ v. *Hotaling*, 193 Cal. 368, 224 Pac. 455, 461, 56 A. L. R. 734, says: "It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended * * * to divest himself of title. If he did, there was an

effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely on the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all of the evidence in a given case bearing upon the question.''

The supreme court of Colorado, in the case of *Griffith* v. *Sands*, 84 Colo. 456, 271 Pac. 191, says: ''The first question is whether directions by a grantor, in an instrument which he had signed, sealed, and acknowledged, to deliver the same after his death, amount to constructive delivery. We think not. (*Childers* v. *Baird*, 59 Colo. 382, 148 Pac. 854.) Indeed, *the complaint shows that there was no delivery because the deed was to be delivered at grantor's death; there could not, then, have been a previous delivery.* This is the ever-recurring case of an attempt at once to give property and keep it, and as long as men keep on trying to do that lawyers will not starve. True, delivery has been said to be a matter of intent, but it is not a matter of intent alone. Some act by which the grantor parts with control of the instrument must accompany the intent [citing cases], but plaintiff's grantor retained the deed and might have withheld it indefinitely, or destroyed it, without liability. It is essential to delivery of a deed that the grantor part with control of it, which James did not do.''

The California supreme court, in the case of *Fisher* v. *Oliver*, 174 Cal. 781, 164 Pac. 800, 803, says: ''For, saving under exceptional circumstances which do not here arise, ownership of real estate so far as that ownership is to be parted with by deed necessitates a delivery of that deed to terminate the grantor's title. And it is unquestionably the general rule that, where a deed remains in the possession of a grantor, to be delivered and to take effect after his death, the deed is void for want of delivery during his lifetime. (*Moore* v. *Trott*, supra [156 Cal. 353, 104 Pac. 578, 134 Am. St. Rep. 131; Id., 162 Cal. 268, 122 Pac. 462] ; *Denis* v. *Velati*, 96 Cal. 223, 31 Pac. 1; Devlin, Deeds, par. 279; *Stevens* v. *Hatch*, 6 Minn. 64

260

( ▮ Gil. 19) ; *Stilwell* v. *Hubbard,* 20 Wend. (N. Y.) 44; *Walter* v. *Way,* 170 Ill. [96] 104, 48 N. E. 421) ''.

An analysis of all of the cases cited in the very able briefs of the respective counsel would unduly extend this opinion. Some of the other authorities supporting the conclusion at which we have arrived are as follows: 9 Cal. Jur. 76; *Roman* v. *Albert,* 81 Mont. 393, 264 Pac. 115; 8 R. C. L. 1002; *Brown* v. *Brown,* 167 Ill. 631, 47 N. E. 1046; Thompson on Real Property, sec. 3860; *Central Trust Co.* v. *Stoddard,* 4 Cal. App. 647, 88 Pac. 806; *Bury* v. *Young,* 98 Cal. 446, 33 Pac. 338, 35 Am. St. Rep. 186; *Moore* v. *Trott,* 162 Cal. 268, 122 Pac. 462; *Thatcher* v. *Capeca,* 75 Wash. 249, 134 Pac. 923; *Williams* v. *Kidd,* 170 Cal. 631, 151 Pac. 1, Ann. Cas. 1916E, 703; *Hudemann* v. *Dodson,* 215 Cal. 3, 7 Pac. (2d) 997; 8 R. C. L. 987.

The deeds in question may not be considered as a will for: ▮ (A) They were not so intended by the grantor; and (B) They are not executed with the required formalities. (*Williams* v. *Kidd,* supra.)

The conclusions here are in entire accord with the former holdings of this court and are supported by the great weight of authority.

A few very respectable authorities have held otherwise, particularly those of Iowa. The case of *Davis* v. *John E. Brown College,* 208 Iowa, 480, 222 N. W. 858, 859, is illustrative of the position taken by that court. In that case the grantor executed deeds and left them with the Capital City State Bank at Des Moines, with the following letter:

''This certifies that I have left with the Capital City State Bank, Deeds to certain real estate, now owned by me and described therein, which deeds are to be held by said Bank as Trustee for the Grantees named in said deeds and to be delivered to the Grantees named in said deeds only in case of my decease. Said deeds to be returned to me on demand by me, otherwise to be delivered to said Grantees.''

This letter was signed by the grantor and written in 1925. The grantor died in 1927, leaving the deeds in the custody of the bank without having attempted to recall them. The Iowa

court held that this constituted a valid delivery. In that opinion the authorities are generally reviewed. The court therein observes: "It is undoubtedly true that the weight of authority in this country sustains the general rule that, where the power to recall a deed deposited with a third party is reserved to the grantor, there is no effectual delivery, and the deed cannot take effect."

The Iowa court in the more recent case of *Robertson* v. *Renshaw,* 220 Iowa, 572, 261 N. W. 645, 651, has this to say: "While the writer of this opinion, if it were an original proposition, would not be inclined to go to the extent of the rule laid down in the recent case of *Davis* v. *John E. Brown College,* supra, yet, in view of the fact that it appears to have been fully, carefully and thoroughly considered, and was decided as recently as June, 1929, and although the rule thus announced is, as we think, contrary to the great weight of authority on the subject, it has support in a few of the prior pronouncements of this court beginning with the case of *Newton* v. *Bealer,* 41 Iowa, 344, which is reasserted and adhered to in this recent case, and we are not inclined at this time to interfere with the rule thus established and so long adhered to in this state. We think the facts bring this case squarely within what we will call the 'minority rule' announced  *  *  *  ."

Each of the five deeds in question recite "Signed, Sealed and Delivered in the presence of C. H. Loud." Counsel for appellants assert that because of this recital, and the provisions of section 6844, Revised Codes, 1935: "A grant duly executed is presumed to have been delivered at its date," the presumption is that the deeds were delivered. That such presumption does attach may not be denied. If there were no other evidence in this case touching upon delivery, then the law presumes that such delivery was made; but there is positive proof that delivery was not made. The evidence arising from the presumption is not conclusive, but may be rebutted by other facts or presumptions; and the facts here show conclusively that the deeds in question were not delivered. (*Springhorn* v. *Springer,* supra; *Hitch* v. *Hitch,* supra.)

By reason of the foregoing we conclude that the findings and conclusions of the trial court are correct and therefore the judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.

Rehearing denied December 16, 1939.

MR. JUSTICE ANGSTMAN:

On motion for rehearing I have given further consideration to the questions determined in this case. The result of our opinion has always seemed unfortunate to me, since it defeats the wishes of the deceased with respect to who should have his property after his death. I was impressed with the justice and logic of the rule announced by the supreme court of Iowa in the cases cited in the foregoing opinion, but upon investigation I found that that court has itself repudiated the rule as announced in those cases and has expressly overruled them in the later case of Orris v. Whipple, 224 Iowa, 1157, 280 N. W. 617, 624, and, as stated in the Orris Case, that court, too, has now "returned to the long and well established rule" and is "in step with our sister states, and supported by the great weight of authority." While there seems to me to be little, if any, reason for the rule so uniformly followed, yet it has been so firmly established and so long adhered to that if a change is desired I think it ought to emanate from the legislative assembly. I therefore concur in the order denying the rehearing.

MR. JUSTICE ERICKSON:

I concur in the above views of MR. JUSTICE ANGSTMAN.