NO.   93-005

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JOSEPH HAYES HAUSEMAN, JAMES JUDD
HAUSEMAN, DEAN M. HAUSEMAN, III, STEVEN
SCOTT HAUSEMAN, and ROBERT CHARLES HAUSEMAN,

　　　　Plaintiffs and Appellants,

　　v.

WILLENE JONES KOSKI, and all other persons,
unknown, claiming or who might claim any
right, title, estate, or interest in or
lien or encumbrance upon the real property
described in the Complaint or any part
thereof adverse to plaintiffs' ownership or
any cloud upon plaintiffs' title thereto,
whether such claim or possible claim be
present or contingent including the person
or persons in possession,

　　　　Defendants and Respondents.

APPEAL FROM:　District Court of the Eighteenth Judicial District,
　　　　　　　　In and for the County of Gallatin,
　　　　　　　　The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellants:

　　　　　　Ben Berg, Jr. and Rienne H. **McElyea,** Berg,
　　　　　　**Lilly,** Andriolo & Tollefsen, Bozeman, Montana

　　　　For Respondents:

　　　　　　Lyman H. Bennett, III and Lynda S. Weaver,
　　　　　　Morrow, Sedivy & Bennett, Bozeman, Montana

Submitted on Briefs:　March 11, 1993

Decided:　August 3, 1993

Filed: FILED
AUG 3 1993
Ed Smith   COURT

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellants Joseph H. Hauseman, James J. Hauseman, Dean M. Hauseman III, Steven S. Hauseman, and Robert C. Hauseman (Hausemans), as co-trustees and interested parties, appeal from an order of the Eighteenth Judicial District Court, Gallatin County, granting summary judgment in favor of the personal representative of the estate of Maurice Jones, and finding that the recording of a revocation of a trust with the clerk and recorder provided constructive delivery to the co-trustees.

We affirm.

The only issue raised by the Hausemans is whether the District Court erred in holding that a recordation of a revocation of a trust agreement effectively revoked the trust.

The facts are undisputed.

On May 1, 1979, Marlyn J. Jones and J. Maurice Jones (trustor), who were both trustors and co-trustees, executed a revocable trust which reserved the right to revoke or amend the trust in whole or in part by an instrument in writing delivered to the co-trustees. Marlyn died on May 14, 1980, and did not exercise her power to revoke. On May 31, 1991, trustor signed a revocation of trust, which his attorney recorded with the clerk and recorder's office on May 31, 1991. On June 13, 1991, trustor died.

On June 20, 1991, trustor's attorney sent the co-trustees, Joseph Hayes Hauseman and James Judd Hauseman, a copy of said revocation via certified mail. Neither of the named individuals

2

received the revocation and the letters were returned to the attorney's office as unclaimed.

Initially, we discuss the standard of review applied in summary judgment cases. Rule 56(c), M.R.Civ.P., states that it is proper to grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. On the cross-motions for summary judgment, the District Court stated that the parties agreed that there were no issues of material fact. Our standard of review on questions of law is whether the district court's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

The following provision contained in the trust agreement is at the center of this dispute:

> Trustors reserve the right at any time, by instrument in writing delivered to the Co-Trustees, and acknowledged in the same manner of conveyance as the real property and title to be recorded in the State of Montana, unless acknowledgement be waived by the Co-Trustee to revoke or amend this trust in whole or in part. The duties and liabilities of the Co-Trustees shall under no circumstances be substantially increased by any amendment here under except by their written consent. Upon the death of the Trustors, this Trust shall become irrevocable and not subject to amendment.

The Hausemans argue that trustor did not follow the manner specified in the trust for delivery of the revocation of the trust. They also contend that the trust was irrevocable because trustor died before his lawyer deposited the revocation in the mail. They maintain that § 72-23-502, MCA (1987) (Repealed. Sec. 220, Ch. 685,

3

L. 1989), requires that if a trustor reserves the power to revoke a trust, the power of revocation must be "strictly pursued."

We begin our analysis with the general rule that in the construction of trusts it is the trustor's intent that controls. 76 Am. Jur. 2d *Trusts* § 17 (1975). To determine the trustor's intent we look to the language of the trust agreement. *In re Marriage of Herrin* (1979) 182 Mont. 142, 146, 595 P.2d 1152, 1155. The language of the trust agreement is clear and unambiguous that trustor reserved the power to revoke the trust agreement at any time prior to his death. For a proper revocation, the trust agreement required the trustor to complete three steps: (1) a writing, (2) delivered to the co-trustees, and (3) acknowledged in the same manner of conveyance as the real property and title to be recorded in the State of Montana.

The parties do not dispute that trustor met the first and third requirements. The District Court concluded that the second requirement was met by the filing at the clerk and recorder's office of the trust revocation. We agree.

The Michigan Supreme Court defined the term "delivery" as meaning:

> It is our view that any act which will accomplish the purpose of the parties in requiring delivery is sufficient to give effect to the revocation. It is not a question of a good or legal delivery. If the purpose requiring it is accomplished, it is immaterial whether the instrument of revocation is in the mail or on the trustee's desk at the time of the donor's death. Delivery is not essential to complete a revocation unless made so by the parties in the trust agreement. What was the purpose of requiring it here? Obviously it was not

*4*

> for the protection of the trustee. The law will do that regardless of delivery or other notice. It is a fair inference that, in requiring delivery, the parties intended to establish the fact of revocation during the life time of the donor, to make sure the status of the trust at that time, to cause a surrender of the instrument, if one were made, so that some stranger or interested person could not give it vitality by an unauthorized delivery after his death. Any act of surrender to that trustee would put the original instrument of revocation beyond the owner's power to alter or destroy would accomplish the purpose in requiring delivery.

**Hackley** Union National Bank v. Farmer, et al. **(Mich. 1931),** 234 N.W. 135, 137.

In Hacklev, prior to his death in Germany, the settlor executed a will and a revocation of a trust agreement. The instrument was signed and acknowledged. A certified copy was sent to the trustee with a letter stating that the settlor revoked the trust. Hacklev, 234 N.W. at 136. The Michigan Court held that these actions were sufficient to constitute constructive delivery. After this analysis, the court then ruled that the revocation was ineffective on other grounds. Hacklev, 234 N.W. at 137.

In Montana, delivery is accomplished by either words, acts, or both. The law does not require actual handing over of the document so long as it is handled in a way that unequivocally shows the intention of the settlor. Carnahan v. Gupton **(1939),** 109 Mont. 244, 96 **P.2d** 513; see also, Springhorn v. Springer, et al. **(1926),** 75 Mont. 294, 243 P. 803.

In this instance, **trustor** executed a written document revoking his trust on May 31, 1991. When the revocation was recorded,

5

trustor directed his attorney to deliver notice to the remaining co-trustees.

The Hausemans contend that § 70-21-302, MCA, is not applicable because they are not subsequent purchasers for value. That argument disregards the purpose of the recording statutes. The recording statutes import notice to all interested parties in matters affecting title to real property. 66 Am. Jur. 2d *Records and Recording Laws* § 103 (1973). The trust property at issue is real property located in Gallatin County. As co-trustees, the Hausemans are interested parties to the realty. All co-trustees received constructive delivery when the revocation of trust was recorded with the Gallatin County Clerk and Recorder. We hold that § 70-21-302(1), MCA, imparts constructive delivery of the contents of the revocation instrument. We hold that the District Court did not err in granting summary judgment in favor of Ms. Koski.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____
Justice

6

Justice Fred J. Weber specially concurs as follows:

I concur with the holding of the majority opinion for the reasons set out in that opinion and also for the reasons set out in this special concurrence.

The Revocation of Trust was executed by J. Maurice Jones both as **Trustor** and as one of the Co-Trustees. The following are the key paragraphs of that Revocation of Trust:

> Under the provisions of said Trust and specifically paragraph II thereof the undersigned as the remaining and sole **Trustor** and Trustee of said Revocable Trust Agreement, by and through these presents and does herewith revoke, cancel and terminate said Trust in all of its particulars, conditions, and circumstances to the effect that from and after the date of this revocation said Trust shall be at an end, terminated and of no further force and effect and the grant of the said real property to the Trust also terminated and of no further force and effect with said property to revert and remain in my name.
> Therefore, as **Trustor** I herewith grant, bargain, assign, transfer, and convey the said Trust to myself as an individual of the above described property to the affect that the title shall no longer be vested or reside in said trust but shall henceforth be in my name individually.

Under the first paragraph, Mr. Jones demonstrated his clear intent as both the sole surviving **Trustor** and as one of the Co-Trustees to terminate the Trust so that it would be of no further force and effect after the date of the Revocation of Trust which was May 31, 1991. In the first paragraph he emphasized that by stating that the Trust terminated and was of no further effect so that the property reverted to and remained in his name.

In the final paragraph, Mr. Jones conveyed the property to himself. As one of three Co-Trustees, this certainly transferred

7

an interest by virtue of the execution and recording of the Revocation of Trust. It established his intent to have the title to the property in his name individually.

As a result of the wording of the Revocation of Trust, Mr. Jones effectively transferred all of his interest as a Co-Trustee to himself individually.

Paragraph IV of the Trust Agreement provided in pertinent part as follows:

IV

. . . [T]he Co-Trustees shall also distribute to the . . . surviving Trustor, such portion, or all the principal, of the Trust property as the . . . surviving Trustor, from time to time may request in writing . . . .

Under that provision, Mr. Jones as surviving Trustor could require the Co-Trustees to distribute to him all of the principal of the trust property. The only requirement in order to do so is that he make his request "in writing." The provisions of the Revocation and Conveyance are sufficient to meet the requirements of Paragraph IV. He clearly directed the Co-Trustees to distribute to him individually all of the principal of the trust property and did so in writing.

I conclude that the surviving two Co-Trustees were therefore obligated under the provisions of Paragraph IV to complete the transfer to Mr. Jones of all of the principal of the Trust.

I join in the opinion that the District Court did not err in granting summary judgment in favor of Ms. Koski.

_____
Justice

**8**

Justice Karla M. Gray dissenting.

I respectfully dissent from the opinion of the majority.

The majority, having begun with the general rule that the trustor's intent controls in the construction and interpretation of trust agreements, departs from this rule in performing its analysis.  I cannot agree.

Here, the trustor established three separate and independent requirements necessary to effectuate a revocation: (1) a writing: (2) delivered to the co-trustees; and (3) acknowledged in the same manner of conveyance as real property and title to be recorded in the State of Montana.  It is clear that a writing was made and that the attempted revocation of trust was recorded; thus, the first and third requirements set forth by the trustor to revoke the trust were met.

The majority concludes that the recordation equals delivery, thus merging two separate requirements into one; on this basis, the majority concludes that the second requirement also was met. Because the trustor's intent to establish three separate requirements for an effective revocation is clear and one of those requirements was not met, the majority has departed from the "trustor's intent" rule.  It also has departed from the applicable Montana statute that a power of revocation must be strictly pursued.  Section 72-23-502, MCA (since repealed, but specifically made controlling over trust instruments executed prior to October 1, 1989).

9

Furthermore, the majority's reliance on <u>Hackley</u> and <u>Carnahan</u> to reach its result is flawed. As quoted by the majority, <u>Hackley</u>, 234 N.W. at 137, states that "[d]elivery is not essential to complete a revocation <u>unless made so by the parties in the trust agreement</u>." (Emphasis added.) Here, delivery <u>was</u> specifically required in the trust agreement. Moreover, it was a stand-alone requirement unrelated to the separate recordation requirement.

It is also my view that <u>Carnahan</u> is inapposite here. The issue in <u>Carnahan</u> was whether certain actions concerning a grant deed constituted delivery under a statute specifically relating to constructive delivery of a deed. It did not interpret a trust agreement, any statute relating to trust agreements, or the general rules regarding trustor's intent and strict construction of efforts at trust revocation. Therefore, it is inapplicable to the case before us.

I would reverse the District Court and hold that, the trustor's stated intent not having been met, the attempted revocation was not effective.

_____
Justice

August 3, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Ben Berg, Jr. & Rienne H. McElyea
Berg, Lilly, Andriolo & Tollefsen
910 Technology Blvd., Ste. A
Bozeman, MT 59715

Lyman H. Bennett, III & Lynda S. Weaver
Morrow, Sedivy & Bennett, P.C.
P.O. Box 1168
Bozeman, MT 59771-1168

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy