No. 14404

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

KEITH W. HERRIN,

Petitioner and Respondent,

-vs-

MOLLY BURKE HERRIN,

Respondent and Appellant.

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Small and Hatch, Helena, Montana
Floyd O. Small argued and Carl Hatch argued, Helena,
Montana

For Respondent:

Jackson and Kelley, Helena, Montana
Doug Kelley argued, Helena, Montana

Submitted: December 15, 1978

Decided JAN 24 1979

Filed: JAN 24 1979

Thomas J. Kearney
_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Molly Burke Herrin appeals from a determination of the District Court of the First Judicial District, the Honorable Gordon R. Bennett presiding without a jury. This action arose when Keith W. Herrin petitioned the District Court for an order directing that certain payments be made to him, pursuant to the terms of the divorce decree which dissolved the parties' marriage. In dispute is the interpretation of a property settlement agreement, which incorporated a stock purchase-and-sale agreement, and which itself was incorporated into a divorce decree.

The facts leading to this dispute are as follows. On February 14, 1969, petitioner Keith W. Herrin entered into an agreement with his brother Gordon R. Herrin under the terms of which Keith was to sell and Gordon was to purchase 481 shares of capital stock in Herrin Ranch, Inc. Two weeks later, on February 28, 1969, respondent filed a complaint for divorce from appellant Molly Burke Herrin, then his wife. On June 20, 1969, appellant and respondent signed a property settlement agreement which incorporated the agreement made between respondent and his brother. In turn, the property settlement agreement was incorporated into the divorce decree, entered August 18, 1969, under the terms of which respondent was awarded custody of the parties' six children, all of whom were minors at the time. The youngest child, Keith W. Herrin, Jr., who was blind and required extraordinary care, died at age 11, on April 6, 1970. As will become apparent, these latter facts are significant in light of the terms of the agreements in dispute.

-2-

The property settlement agreement reads in pertinent part as follows:

> "4. Second Party [Keith Herrin] hereby makes to First Party [Molly Herrin] the following qualified or conditional assignment of that certain 'STOCK PURCHASE AND SALE AGREEMENT' between First Party and one Gordon T. Herrin, dated the 14th day of February, 1969, the subject matter thereof being the 481 shares of the capital stock of Herrin Ranch Inc., a Montana corporation, formerly held by Second Party, a copy of said last mentioned agreement being hereto attached, marked Exhibit A, and made a part hereof. The conditions and qualifications of said assignment are as follows. . . . If the said Keith W. Herrin, Jr., dies during the term of said agreement, exhibit A hereto, or while there is any money or property left in any trust aforesaid, then said Trust shall cease and all of the property and income and corpus of said trust shall revert to Second Party, and automatically be and become his sole property."

The omitted portion recites other conditions inapplicable to the problem here. The circumstances which would have called them into play, appellant's death or remarriage, never occurred.

Appellant's construction of the above is short and to the point. The antecedent condition, Keith, Jr.'s death, was fulfilled; thus, consideration of the last condition of paragraph 4 became imperative. As appellant correctly states, there was never any trust, such that, upon Keith Jr.'s death, it should cease and its property and income revert to respondent. The conditions requiring the creation of a trust, i.e., appellant's remarriage or death, never occurred; appellant neither remarried nor died, so no trust was established. Because no trust was established, it could not cease; there being no trust, there was no property and income to revert to respondent. The payments forthcoming under the terms of the stock purchase-and-sale agreement, claims appellant, were assigned to her personally and not as a trustee, through the property settlement agreement.

Because they were so assigned and because no trust was created, appellant argues that she is entitled to continue receiving the payments made by Gordon T. Herrin under the stock agreement.

Appellant argues that the mandate of section 13-704, R.C.M. 1947, governs this case. There it is provided that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." So, too, is section 13-705, R.C.M. 1947, applicable; that statute reads in its entirety, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter." According to appellant, the clear and explicit language of the instrument dictates that she continue receiving the payments. The conditions requiring creation of a trust never came to pass; because there was no trust, reversion of its corpus is an impossibility.

The District Court judge acknowledged that Molly Herrin "contends that condition 5 actually requires a trust to have been created to entitle petitioner [Keith Herrin] to the payments." Relying on sections 13-707 and 13-702, R.C.M. 1947, requiring consideration of the document as a whole and requiring that its interpretation give effect to the parties' intention as it existed at the time of contracting as evidenced by the language of the instrument, Judge Bennett concluded that it was drafted for the benefit of the boy, Keith, Jr., not the appellant, and therefore that, because the child had died and was no longer in need of its benefits, the payments were to be made to respondent herein. The court determined that:

"In light of the whole separation agreement, it is clear that at the time the agreement was created, the parties intended that the assignment be for the benefit of Keith, Jr., and if he died, the purpose of the assignment would fail and the payments were to revert back to the petitioner [Keith Herrin.] There is no indication that the parties intended the payments to be for the benefit of the respondent [Molly Herrin] considering the language of the entire instrument and the conditions in paragraph 4."

In reaching that conclusion, the judge relied on the following interpretation of the property settlement agreement under consideration:

"The qualifications and conditions as interpreted by this Court are:

". . .

"5. If Keith, Jr., dies either during the term of the stock purchase and sale agreement or while there are assets in any trust created pursuant to paragraph 4, then all property pursuant to the stock purchase and sale agreement, and all the corpus and income in any trust pursuant to paragraph 4 reverts to the petitioner." (Emphasis added.)

The emphasized portion of the above is troublesome. The actual language of the corresponding portion of paragraph 4 does not include any reference to "all property pursuant to the stock purchase and sale agreement". That has been interpolated by the District Court. Those words cannot be found in the original; neither can anything remotely correspondent to them be found there. If the language of the instrument is to control, as it must according to statutory rules of interpretation of contracts, this interpolation is improper.

Section 93-401-15, R.C.M. 1947, states the general rule that in construing an instrument, a judge's office is simply to ascertain and declare what it contains in terms or in substance, not to insert omitted matter or omit matter

inserted. See United States v. Seaboard Surety Co. (D. Mont. 1938), 26 F.Supp. 681, 688, aff'd <u>sub</u> <u>nom</u>. Watsabaugh & Co. v. Seaboard Surety Co. (9th Cir. 1939), 106 F.2d 355. A court has no authority to disregard the express language used by the parties. E.g., Williams v. Insurance Company of North America (1967), 150 Mont. 292, 295, 434 P.2d 395, 397. It is reversible error for the District Court to insert into a contract language not put there by the parties. See Danielson v. Danielson (1977), ____ Mont. _____, 560 P.2d 893, 34 St.Rep. 76.

It is true, as respondent emphasizes, that paragraph 4 itself begins with specific reference to "the following <u>qualified</u> or <u>conditional</u> assignment" of payments to be made by Gordon Herrin under the stock purchase-and-sale agreement. Appellant does not contest that qualifications and conditions were elaborated in the instrument. Two of the conditions, those of appellant's death or remarriage, never came to pass. The other condition, that of Keith, Jr.'s death, was fulfilled so as to activate the provision in dispute here. The specific language of the remainder of that sentence says "said <u>Trust</u> shall cease". There never was a trust. The language of the instrument is "all of the property and income and corpus of said <u>trust</u> shall revert". Again, there never was a trust, the property, income and corpus of which could <u>revert</u> to <u>anyone</u>. The language of the document controls its interpretation, and appellant's interpretation is correct on this point.

Of course, the problem is that the sentence contains an unspoken presumption--that there is or will be a trust which will be susceptible of cessation and the corpus and income of which susceptible of reversion. The sentence bespeaks

careless draftsmanship. Nonetheless, the language of the instrument binds the parties, absent agreement, i.e., another contract of sorts, that it not do so. It is the policy of this Court not to rewrite contracts for disgruntled litigants. While a court may interpret contracts which are open to interpretation, a court may not make a new one for the parties and may not alter or amend one which the parties themselves have made. E.g., Danielson v. Danielson, ____ Mont. at ____, 560 P.2d at 895, and cases cited therein.

We are aided in our decision to reverse, albeit somewhat reluctantly, the District Court, by the fact that if appellant is deemed unentitled to the payments made under the stock agreement, she takes nothing but her own personal property under the property settlement agreement. Respondent sold all of his shares of the capital stock of the ranch to his brother two weeks before filing for divorce from his wife of some twenty years. The ranch was the only substantial asset of the marriage; it had been the parties' home for the duration of their marriage; Molly had contributed to the marital unit and to the upkeep of the ranch as a homemaker. She herself received no maintenance money; she was not awarded the family home or any part of the ranch property; she kept only her own personal property. While it is true, as respondent asserts, that she received money for support of the children and that she was able to rent the family home for a "low" monthly sum, which rental was deducted each month from the payments made by Gordon Herrin under the stock purchase-and-sale agreement, the property settlement agreement gives nothing to appellant except her personal belongings and, she argues, the right to receive moneys paid under the stock agreement.

The judgment of the District Court is reversed. The payments from the stock purchase-and-sale agreement belong to appellant herein; the money paid to the District Court during the pendency of the action below and all subsequent payments are to go to appellant.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-