No. 83-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN RE THE MARRIAGE OF
FRED L. THOMPSON,

Petitioner and Appellant,

and

ANN W. THOMPSON,

Respondent and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Landoe, Brown, Planalp, Kommers & Lineberger;
Gene I. Brown, Bozeman, Montana

For Respondent:

Nash & Nash; Michael M. Nash, Bozeman, Montana

Submitted on Briefs: December 1, 1983

Decided: February 9, 1984

Filed: FEB 9 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal in a domestic relations case arising in the District Court of the Eighteenth Judicial District in and for the county of Gallatin.

The parties to this marriage, Fred and Ann Thompson, were married for the second time on August 24, 1975. Their previous marriage had lasted approximately eleven years and resulted in a divorce in 1973. The parties had only been married to each other, and three children were born of their marriages, namely Wendy, born in 1965, Scott, born in 1968 and Chris born in 1978.

The parties separated on August 27, 1981, after living several years in West Yellowstone, Montana. Respondent and the children moved to Spokane, Washington where respondent attended graduate school at Whitworth College, and at the time of the hearing was within several months of obtaining her masters degree in education. She was employed at that time as a school teacher in the Spokane Public School System.

Upon going to Spokane in August of 1981, respondent, who had previously taught school there, was unable to get a job teaching school so she went to work as a receptionist at a medical lab and attended graduate school at night. Her earnings at the medical lab were approximately $800 per month. This figure included money she received from appellant as partial support payments for their children, who were with her in Spokane. During this time while working and attending school she testified she received approximately $5,000 from her parents which went to support

her family and help pay for her education costs.

On January 6, 1983, respondent commenced employment as a school teacher with the Spokane Public School System as a teacher of the fifth grade. Her approximate gross annual income was $20,000, and her net take-home pay amounted to $1,056.72 per month. In addition she testified that after several months in the school system, she would be entitled to participate in the medical plan offered through the school system, and that she had delayed medical treatment for herself and the children during this period due to the fact that there was no money available for this purpose. Respondent testified that her estimated current monthly expenses were $1,630 and as long as she was attending college she occupied student quarters which were considerably cheaper than that which she could obtain in the community and that as soon as she graduated in May of 1983, she would have to leave campus housing to lease a home in Spokane at considerably greater cost. Respondent estimated that she had an anticipated deficit of approximately $897 per month in meeting her personal and the childrens' monthly expenses.

Appellant at the time of the hearing, was 41 years old, had two years of college training, and was in good health. Since the separation of the parties he has resided in Casper, Wyoming, where he is employed as a real estate salesman. He also lives and works out of West Yellowstone, Montana. The home that the parties own in West Yellowstone has an approximate value of $110,000 with a considerable indebtedness against the same, and appellant testified that the property was up for sale, but there was not much of a

market for a home of that value in West Yellowstone.

The testimony of both parties indicates that not only in West Yellowstone where they lived for three years, but in Wyoming and Utah, they had established a rather high standard of living. This turned out to be based upon appellant's ability to borrow considerable sums of money from banks and other lending institutions without putting up much security. Appellant estimated that his income for the past two years was in the vicinity of $28,000 per year, but respondent's estimate of his income was closer to $60,000. This estimate by the respondent was based upon statements that he had made to her during the period, and her knowledge of his capacity to earn a substantial income in the sales field.

At the time of the hearing the District Court found the parties' assets consisted of the family home, equity in a storage business in West Yellowstone, respondent's automobile, household furnishings and personal effects.

The District Court issued its findings of fact and conclusions of law, and directed appellant to pay respondent the sum of $500 per month for her maintenance and support until respondent dies, remarries, or July 5, 1993, whichever occurs first. In addition the court ordered appellant to pay the sum of $200 per month per child for the two minor children until they reach the age of majority. The Court also ordered the residence owned by the parties be sold and the joint obligations paid out of the net proceeds, with the remainder to be divided equally between the parties. From these findings of fact and conclusions of law and judgment appellant appeals.

Two issues are presented for our consideration:

(1) Did the District Court properly follow the statutory requirements in establishing an award for spousal maintenance?

(2) Is the amount of the award for maintenance and the time frame imposed excessive?

The first issue concerns awarding respondent spousal support in the sum of $500 per month upon the previously noted conditions. Appellant argues that under Section 40-4-203(1), MCA the trial court failed to follow the conditions set forth in considering the award of maintenance. Section 40-4-203(1), MCA provides:

> "In a proceeding for dissolution of marriage or legal separation or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
> "(a) lacks sufficient property to provide for his reasonable needs; and
>
> "(b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

Arguing that maintenance is not favored, and that the amount is excessive, appellant contends that the court did not follow the statutory requirements set forth in the above statute.

The standard of review of a district court ruling is set forth in our rule 52(a) M.R.Civ.P., as follows:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of

the witnesses."

An examination of the record indicates that the trial court was called upon to judge the credibility of appellant. He appeared at the divorce proceedings alleging that he did not want the divorce, even though he had filed for it. His wheeling and dealing operations over a number of years, borrowing from various financial institutions putting up little security, raised considerable questions about his credibility. He failed to bring with him the papers necessary to substantiate much of his testimony casting a shadow of doubt over his story. For example, on direct examination he was unable to give a definite answer of his annual salary. He alleged that his employer's bookeeper had died of a heart attack and those records were not available for a period of years including the past three where he had not filed any income tax returns.

In addition it is interesting to note that after the second marriage respondent sold a house in Spokane and deposited somewhere between $12,000 and $14,000 in a bank in Ogden, Utah where appellant was in the auto business. The undisputed testimony of respondent is that appellant somehow got $12,000 of that money out of the bank to finance a flooring loan on his automobile business, and that she was unaware at the time that he had used the money in that manner. In addition, the trial court heard appellant's testimony of how he handled his financial operations in such a manner that not only did his wife lose money but it appeared that even his own mother lost money. Furthermore, practically every financial institution that he dealt with, as many as five or six, holds paper that has little or no

-6-

value. The record leaves no question that the above amounts were taken from the wife, and in considering how to handle this matter, the trial court obviously made an effort to recompense her for that loss.

We noted in Kowis v. Kowis (Mont. 1983) 658 P.2d 1084, 40 St.Rep. 149, citing Cameron v. Cameron (1978) 179 Mont. 219, 587 P.2d 939, the following:

> "The scope of this Court's review when considering the findings and conclusions of a trial court sitting without a jury is clear and well settled in Montana. A brief consideration of those rules is appropriate at this point.
>
> "'This Court's function in reviewing findings of fact in a civil action tried by the district court without a jury is not to substitute its judgment in place of the trier of facts but rather it is "confined to determining whether there is substantial credible evidence to support" the findings of fact and conclusions of law.' (Citations omitted)
>
> "Although conflicts may exist in the evidence presented, it is the duty of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence, unless there is a clear preponderance of evidence against such findings." (citations omitted) 658 P.2d at 1087, 40 St.Rep. at 152.

As noted above, before a district court can award either spouse maintenance, it must find that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs. Section 40-4-203(1)(a), MCA. It is well settled that sufficient property as used here means income producing, not income consuming property. See In re Marriage of Laster, (Mont. 1982) 643 P.2d 597, 39 St.Rep. 737; and In re Marriage of Herron (1979), 182 Mont. 142, 595 P.2d 1152.

Here the judgment gave respondent an automobile together with the monthly payments, her personal effects and one-half of the net proceeds from the sale of the family home in West Yellowstone after payment of debts which were well in excess of $30,000. While the home has been listed for sale for over a year, it has not been sold and she has received no income from the property. In addition the interest on the debt obligations continue to erode her equity in the home. Following the findings of the District Court she also must now make a monthly payment of $257.52 on an automobile which raises her monthly deficit from practically $900 to $1,054.52 each month.

The record reveals ample evidence to support respondent's testimony. She testified to a monthly deficit of $897 per month in the amount needed to meet her needs and those of the minor children. In addition, the property distributed to her was income consuming property, not income producing property. Thus we find the award of maintenance by the District Court was based on substantial evidence.

The second issue is whether the District Court abused its discretion in determining the amount of maintenance and imposing limitations on its continuance.

Section 40-4-203(2), MCA sets forth relevent facts for the district court to consider in determining maintenance and the time period for its duration:

> "(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> "(b) the time necessary to acquire

-8-

sufficient education or training to enable the party seeking maintenance to find appropriate employment;

"(c) the standard of living established during the marriage;

"(d) the duration of the marriage;

"(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

"(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

We held in Jorgensen v. Jorgensen (1979), 180 Mont. 294, 590 P.2d 606 that, "What is important as far as the maintenance award is concerned is the amount of income available to the spouse to make the maintenance payments at the time required to be made." 180 Mont. at 303, 590 P.2d at 611-12.

The District Court did its best to make specific findings as to each statutory element with little or no help from appellant during the trial. The record here clearly indicates that there is sufficient support for the amount reached by the District Court. Appellant had provided up to $800 per month support during 1982. The court awarded her $400 per month child support for the minor children, Scott and Chris. Even totalling her income of $1,058 with the $400 child support, she is still short approximately $500 of her expenses not including the $257.52 car payment. Also while she has aquired a masters degree and is employed as a teacher, this does not yield a sufficient income to care for the family's needs. The record indicates that her current standard of living is considerably lower than that which she enjoyed during her marriage and that the standard of living

of appellant did not experience any noticeable change after she left.

Also the conditions of maintenance imposed by the trial judge are not excessive. The District Court ordered that payments be made until remarriage, death or passage of ten years. Although the court did not specify in its findings why it set those conditions, they are not beyond substantiation. First the record indicates that respondent is facing medical problems, namely a cataract condition, which will have to be cared for in the next few years. Second, respondent has custodial responsibilites which will continue for at least another thirteen years. Finally, the District Court could well have considered the fact that respondent's pay as a school teacher in the next ten years needed supplementation to restore not only her standard of living but to properly care for those in her home.

While appellant cites numerous cases, within and without this jurisdiction, where $500 per month maintenance was determined excessive, each of those cases was decided on its specific facts. Here the trial court heard the facts, weighed the credibility of the witnesses, and determined the case according to the facts and the law.

The decision of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

John C Shelby

Frank B Morison

_____

Justices