NO. 83-340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

———————————

DWIGHT McCORMACK,

Claimant and Respondent,

vs.

SEARS, ROEBUCK & COMPANY, Employer,
SEARS, ROEBUCK & COMPANY,

Defendant and Appellant.

———————————

Appeal from:  Workers' Compensation Court
              Honorable Timothy Reardon, Judge presiding.

Counsel of Record:

        For Appellant:

            Jardine, Stephenson, Blewett & Weaver, Great Falls,
             Montana

        For Respondent:

            Bernard J.Everett, Anaconda, Montana

———————————

Submitted on Briefs: November 3, 1983

Decided: May 24, 1984

Filed:    MAY 24 1984

          _Ethel M. Harrison_
——————————————————————————————————
                Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The employer, Sears, Roebuck & Co., appeals an order of the Workers' Compensation Court granting permanent total disability benefits to claimant, Dwight McCormack, based on a condition set forth in section 39-71-1005, MCA, that claimant successfully pursue a program of vocational rehabilitation.

The employer raises two issues concerning the disability rulings, and the third issue is a claim that claimant did not have a right to obtain vocational rehabilitation without first being evaluated by the Workers' Compensation Division under section 39-71-1005, MCA, even though the claimant had been examined and evaluated by the Department of Social and Rehabilitation Services. We affirm.

The employer first contends that the finding of permanent total disability is legally unsupportable because it was not, as is required by section 39-71-116(13), MCA, "supported by a preponderance of medical evidence." We hold, however, that the medical evidence of objective symptoms, together with the testimony of the claimant translating those symptoms into pain that physically impaired his ability to move his shoulder, fully supports the finding of permanent total disability. The employer next contends that the finding of permanent total disability, as also required by section 39-71-116(13), MCA, was not supported by evidence that claimant had no reasonable prospect of returning to the normal labor market. The record, however, amply supports the ruling that claimant had no reasonable prospect of returning to his normal labor market as a service repairman. Finally, the employer argues that the trial court erred in permitting the claimant to bypass the statutory procedure for evaluation

- 2 -

to determine whether one can be occupationally retrained and in which occupation one should be retrained. We do not necessarily agree with employer's interpretation of section 39-71-1001, MCA, on which it relies, but hold also that the employer, by stipulating to the use of an SRS medical report, has waived its right to complain that claimant bypassed the statutory procedures.

At the time of his injury on November 2, 1981, claimant had been a Sears' employee for 13 years. He had worked only for Sears since his graduation from high school and his work experience was limited to automotive and appliance repair together with a short experience as the automotive department manager. Claimant had no other job experience.

Claimant had a history of repeatedly dislocating his shoulders. In 1976, Dr. Berg of Billings performed surgery on his right shoulder when it was dislocated. Claimant reinjured his right shoulder on November 2, 1981, while working on a kitchen range at a customer's home in Billings. While pulling the stove away from the wall he fell backwards and strained his right shoulder and struck his right elbow on cupboards behind him. He immediately felt pain in his right shoulder and had numbness in his right hand. After resting for a while he finished the repair job. He continued to work for the next several days but the pain in his right shoulder and the numbness in his right hand remained. Claimant reported his injury to his employer on November 11 and the employer set up an appointment for November 16 with Dr. Berg, the physician who had operated on claimant's right shoulder in 1976.

At the November 16 examination, the claimant complained of right shoulder pain and numbness in his right hand. Dr.

Berg diagnosed claimant's shoulder problem as a shoulder dislocation and prescribed medicine and an exercise program. Claimant was told that he should not return to work until December 4. Another examination was set for December 28. Claimant, however, continued to work four more days (until December 20), but then had to quit because the pain was too severe to perform the movements necessary for an appliance repairman. On December 28, however, after another examination, Dr. Berg released claimant to return to work with no restrictions. But claimant never worked again.

Three days after his final examination by Dr. Berg, the pain in claimant's shoulder and the numbness in his hand led him to seek further medical attention in Butte. On December 31, Dr. Davidson diagnosed claimant's condition as residial problems from the right shoulder dislocation and mild right ulnar nerve palsy. Just 10 days later, January 10, 1982, Dr. Davidson performed surgery to correct the ulnar nerve problem.

Claimant saw Dr. Davidson for a follow-up examination on January 20, 1982, and although claimant still had pain in his right shoulder, he reported that the numbness in his fingers had decreased. Dr. Davidson examined claimant again in February 1982, and claimant still complained of pain in his right shoulder. The doctor ordered four weeks of therapy to alleviate the shoulder pain. Dr. Davidson last examined claimant on April 13, 1982, and claimant still reported pain in his right shoulder.

Because the pain in claimant's right shoulder persisted, claimant, at the request of the employer, was examined by Dr. Canty on May 26, 1982. Claimant reported that he still had considerable pain in his right shoulder and Dr. Canty

determined that claimant had a chronic inflammation of the shoulder area, but Dr. Canty also stated that he expected claimant's shoulder function to improve.

During this time the claimant was unemployed and the employer had refused to pay him compensation benefits for the injury he sustained on November 2, 1981. Because of his inability to find a job and because he had no source of income, claimant, in June 1982, went on his own initiative to the Department of Social and Rehabilitation Services (SRS) to seek help in training for a change in occupation. At the request of SRS, Dr. Gilboy of Butte examined claimant; and SRS determined that claimant could be retrained in computer science, based on the examination recommendations that claimant avoid pulling, lifting, pushing or reaching motions with his right arm and shoulder. Dr. Gilboy's report was later stipulated into the record by the claimant and the employer as part of the evidentiary record on the disability issue.

Based on the SRS determination that he was qualified for occupational retraining in computer science, claimant enrolled in the summer of 1982 in the computer science program at Butte's College of Mineral Science and Technology. He continued in this program, received an A in each of the two courses taken by the time of the hearing, and he testified that the program would take from four to five years to complete.

The Workers' Compensation Court ruled that claimant was permanently totally disabled, but that as a condition of receiving benefits, he would, under the authority of section 39-71-1005, MCA, be required to continue in a program of vocational rehabilitation. In ruling on the disability issue

the court relied on the depostion testimony of Drs. Berg, Davidson and Canty. In addition, the court relied on claimant's testimony that he had such severe pain in his right shoulder that he could not engage in the pushing, pulling, lifting and shoving motions necessary to perform the functions of a service repairman.

## I. PERMANENT TOTAL DISABILITY--MEDICAL EVIDENCE

The medical question turned on whether claimant had such disabling pain in his right shoulder that he could not properly perform his former appliance repair duties because of the physical movements required. Another part of the disability question turned on whether claimant had established that he could not reasonably find employment in the normal labor market. The employer concedes that claimant suffered a permanent partial disability, but argues that the medical evidence does not support a finding and conclusion that claimant cannot return to his former type of employment. The undisputed medical evidence established that claimant, on November 2, 1981, reinjured his shoulder, and that he had also injured the ulnar nerve in the right arm that required corrective surgery.

To support a determination of permanent total disability, section 39-71-116(13), MCA, requires in part that any determination of permanent total disability "shall be supported by a preponderance of medical testimony." The employer argues that there is a total absence of medical testimony to support a finding that the pain in claimant's shoulder prevents him from performing the normal duties of an appliance repairman. The employer argues that the trial court's findings improperly relied on claimant's testimony that his pain was so severe in his right shoulder that he was

- 6 -

unable to perform the physical movements necessary for proper performance as a service repairman. In short, the employer argues that the medical evidence established that the claimant could return to his work as an appliance repairman.

We have no doubt that claimant's testimony, together with testimony of his sister-in-law, establishes the painful shoulder condition with which he has been forced to live. He has been forced to change in many aspects of his life. For example, he is righthanded but the pain in his right shoulder forced him to use his left hand in performing certain tasks. He cannot perform minimal household chores without great pain. He cannot perform even the simple task of driving an automobile or typing on a typewriter without severe shoulder pain. The trial court was clearly impressed by claimant's testimony, and found him to be a most credible witness.

Beyond claimant's testimony as to shoulder pain leading to inability to properly use his right arm and shoulder, the medical evidence abundantly establishes a firm medical basis for the complaints of pain. The trial court noted that "none of the physicians who examined the claimant even suggested he was untruthful in his reports of his symptoms." The physicians' testimony set forth objective symptomology from which the trial court could fairly conclude that severe pain was a component of the described symptoms. For this conclusion, the court clearly had a right to rely heavily on the testimony of the claimant.

Dr. Davidson's prognosis of claimant's right shoulder pain was "not good;" he testified that claimant did not respond to treatment and did not get complete relief from pain. He testified that continued pain would prevent claimant from returning to his normal duties as a service

repairman, and that claimant should avoid activities that involve pushing, pulling, lifting and reaching.

Dr. Canty described claimant's painful shoulder condition as "chronic," and testified that although he could force claimant's right shoulder through a full range of motion, that claimant on his own volition could only force the shoulder through an 80 percent range of motion. The limited shoulder movement was "due to inflammation and irritation of the soft tissue about the shoulder joint itself." Although he examined claimant only once on behalf of the employer, he testified that the continuance of shoulder pain meant that it was a chronic condition.

Finally, the report of Dr. Gilboy, who examined claimant on behalf of the SRS, and which was relied on in admitting claimant to a vocational rehabilitation program, was stipulated into evidence. Dr. Gilboy reported that claimant had a quite limited range of motion in his right shoulder, that he could not put his arm over his head, and that he had a "fair amount of pain" when range of motion was forced. Dr. Gilboy concluded that claimant should avoid pulling, lifting, pushing and reaching activities.

Although the employer relies on an absence of medical evidence, the trial court entered three significant findings that are not challenged by the employer. These findings were based not only on the testimony of claimant, but on the testimony of two physicians. The trial court relied on Dr. Davidson's testimony in finding that from November 20, 1981 (when claimant had to quit work because of the pain), to the time of trial, the pain the claimant experienced in his shoulder "prevented him from returning to work for the employer . . ." The court relied on the testimony of Dr.

Davidson in finding that "the pain the claimant experiences in his right shoulder and its susceptibility to exacerbation with use is a permanent condition." Finally, the court relied on the testimony of Dr. Davidson and Dr. Canty in finding that "the pain the claimant experiences in his right shoulder when pushing, pulling, reaching or lifting prevents him from returning to work as a television appliance repairman or any other job that would require him to use his right shoulder to push, pull, reach or lift."

Based on this record, to hold that the medical evidence did not support the trial court's findings and conclusions of total permanent disability, would require this Court to bury its head in the sand.

## II. PERMANENT TOTAL DISABILITY--INABILITY TO PARTICIPATE IN NORMAL LABOR MARKET

A second requirement under section 39-71-116(13), MCA, for a determination of total permanent disability, is that the permanent character of the injuries ". . . results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market." The employer argues that it was not sufficient for claimant to merely go through his entire work-life employment history with Sears and for him to testify that the pain in his shoulder made him unable to engage in the physical activities of an appliance repairman. The employer, therefore, argues that the record is devoid of any significant evidence to support the statutory requirement.

Other than his employment history at Sears, however, claimant had no other work history to offer--he had worked for Sears ever since his graduation from high school. This experience was limited to automotive and appliance repair

with the exception of a short time as automotive department manager. Claimant testified that the jobs in this field required extensive lifting and reaching, pushing and pulling, and that the pain in his shoulder prevented him from doing these movements. Notwithstanding claimant's testimony as to incapacitating pain in his shoulder that prevented performance of the required activities, and notwithstanding the supporting medical evidence of the injury that provided an objective basis for claimant's complaints of pain, the employer argues that claimant did not establish his inability to obtain employment in the normal labor market.

The trial court concluded that claimant's normal labor market was that of automobile repair jobs and television and electrical appliance repair jobs, but that his industrial injury prevented him from doing the physical movements necessary to performance in this capacity. The court noted that the employer did not refute claimant's evidence or attempt to establish other types of employment for which claimant's education, age, physical condition, and work experience qualified him. The court therefore concluded that claimant had no reasonable prospect of finding regular employment in his normal labor market and that he must be retrained to expand his normal market to enable him to have a reasonable prospect of finding regular employment.

We are convinced that the claimant's proof satisfied the statutory requirement.

III.  REHABILITATION--THE STATUTORY SCHEME FOR EVALUATION

At the time claimant went to the Department of Social and Rehabilitation Services for occupational retraining, he was not being paid Workers' Compensation benefits, and in fact the employer had consistently denied those benefits to

him. The SRS tested claimant for apptitudes in occupational retraining, and, in addition, before recommending a change in occupation, had him examined by Dr. Gilboy in Butte. Dr. Gilboy submitted his report to the SRS, and partly based on that report, claimant was approved for retraining in computer science. The claimant and the employer stipulated at trial before the Workers' Compensation Court, that Dr. Gilboy's medical report could be considered on the nature and extent of claimant's disability claim.

The employer now raises a question of whether claimant could avail himself under the Workers' Compensation Act of occupational retraining without first being evaluated by the Workers' Compensation Division. The employer relies on section 39-71-1001, MCA, which is the first of a rather extensive statutory scheme relating to occupational rehabilitation. The employer, in effect, would have this Court nullify the occupational training program embarked on by the claimant because he did not start with the proper agency. Although we do not read section 39-71-1001, MCA, in the same way as the employer, and although that statute in fact requires the SRS to handle all occupational retraining referrals, a detailed discussion of the statutes and how they relate to each other, would serve no useful purpose. We dispose of this issue by a holding that the employer has waived any right to complain that claimant bypassed the statutory procedures for occupational retraining.

The employer agreed to the use of Dr. Gilboy's report on the issue of the nature and extent of claimant's claim of disability--permanent partial disability versus permanent total disability. Had claimant not gone to SRS, and had SRS not obtained the medical report from Dr. Gilboy before the

decision to retrain claimant in another occupation, that report would not have been available. The medical report was obtained specifically for use by SRS in evaluating claimant's application for retraining. The employer agreed to its use as part of the evidentiary record relating to the nature and extent of claimant's disability. Whatever the evidentiary value of the report may have been, it would not have been available unless claimant had gone to SRS on his own seeking occupational rehabilitation. It would be unfair to permit the employer on the one hand, to rely on evidence from the SRS obtained only because claimant went to SRS for an evaluation, but on the other hand, to permit the employer to complain that claimant should not have gone to the SRS in the first place because he had not obtained an evaluation from the Workers' Compensation, and a referral to SRS. In agreeing to use of Dr. Gilboy's medical report for consideration on the merits, the employer is in no position to complain that claimant had no right being examined by Dr. Gilboy in the first place because he had bypassed the statutory procedures.

The order of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

- 12 -

Justices

- 13 -