No. 84-450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN RE MARRIAGE OF

WILMA YADON,

          Petitioner and Respondent,

  and

ARTHUR LYNN YADON,

          Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bolinger & Conover; H.A. Bolinger, Bozeman, Montana

    For Respondent:

        Bryan & Atkins; Mark Bryan, Bozeman, Montana

_____

Submitted on Briefs:  March 7, 1985

Decided:  May 2, 1985

Filed: 1985

_____
                  Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Eighteenth Judicial District in and for the County of Gallatin, concerning the distribution of the parties' marital assets. We affirm.

After thirty-nine years of married life, and after raising five children, who are now adults, the parties in this action agreed to dissolve the marriage. The respondent (wife), at the time of the separation, was fifty-six years of age and had completed her first year of high school. She currently has serious medical problems which required hospitalization shortly before trial. Her condition will require ongoing medical treatment and medication for the remainder of her life. The appellant, (husband) is fifty-eight years of age. He has made a living for the past fourteen years as an outdoor guide, operating the Bighorn Outfitters, a guide business, in Manhattan, Montana. In addition to serving as a guide for hunting parties, the husband engaged in farming on leased property. In 1981 the farm was sold, and as a result he lost the leases.

During the marriage the parties accumulated major assets which include a house valued at $60,000 and real property valued at $45,000. For the past several years, the guide business has earned approximately $15,000 per year in family income. The wife served as the booking agent for the guide business as the business was operated out of the home. The wife made reservations for the various hunting parties that called in from around the country.

The decree from the District Court dissolving the marriage decreed the division of the real property, awarded the guide and outfitting business to the husband, and awarded maintenance to the wife. The court awarded the wife the

family home, one acre of land and $500 per month maintenance. The court awarded the husband the use of 19.59 acres of pasture land. The land was subject to a lien to secure the payment of the maintenance money awarded the wife, with the provision that if the pasture land was sold the husband would purchase an annuity with proceeds to insure the maintenance payments to the wife. The decree further provided that in the event of the death of the husband, prior to the wife's death or remarriage, the maintenance payments would continue to be a lien against the estate of the husband. The court also awarded the husband the assets of the outfitting business, subject to the husband making payment on a marital debt of $12,000.

This Court is asked to determine the following:

(1) The establishment of the value of the house and business;

(2) how the major assets are to be divided; and

(3) the wife's maintenance and costs in the proceedings.

Concerning the first issue, the record establishes that both parties agreed that a Michaela Shyne, a certified property appraiser, would appraise the property. The appraisal fee was to be paid by the husband. The appraisal was introduced in evidence and showed that the house and property were valued at $105,000. The wife testified in support of the appraisal. The husband testified that the house and property should be valued at $80,000 but offered no documentation to support his opinion.

As to the evaluation of the family's outfitting business, there were several evaluations submitted to the court for consideration: (1) the business could be valued as a going concern; or (2) the value could be determined by the assets held by the business. The husband testified that at

3

the time of trial he had $23,334.74 worth of advance bookings for the 1984-85 hunting season. This figure represents only one-half of the total amount to be paid by the hunters. The wife offered the only testimony as to the value of the business as a going concern. Wesely C. Carlisle, the family accountant for the past four years, testified that using a net-income investment approach, the value of the business was $161,852.

Contradictory evidence was offered by both sides as to the value of the assets held by the business. The assets consisted of three hunting permits, one on Burlington Northern land, which could be transferred, and two Forest Service permits which could be transferred if there were a total sale of the business but could not be transferred as a matter of right. Additional assets set forth as exhibits before the court included hunting equipment, horses, saddles, vehicles and other items.

In addition to the testimony of the wife and the husband as to the value of the guide business, a Robert Arnaud, a guide and outfitter, gave the court a valuation of the business' assets. The court also received the testimony of Denise Hassel, a daughter of the parties who is an insurance underwriter. She submitted evidence of an audit and value of the business assets.

The husband raises the issue that the court erred in not establishing a value of the entire marital assets as required by section 40-4-202, MCA. This appears in the court's finding no. 18. The husband argues that the court's failure would lead to an inequitable distribution of assets and the impossibility on the part of the husband to pay the maintenance as ordered.

Admittedly the court had difficulty in its evaluation of the family business. However, in order to understand the

court's findings, it is necessary to list findings 17 through 19:

> "17. That the Petitioner argued that the value of the business assets were approximately FIFTY THOUSAND DOLLARS ($50,000.00), but because of the value of Forest Service and Burlington Northern permits, a customer list, and a special life style, the true value of the business is in the range of ONE HUNDRED SIXTY-ONE THOUSAND DOLLARS ($161,000.00).
>
> "18. That the Respondent valued the outfitting business at NINETEEN THOUSAND EIGHT HUNDRED SEVENTY-FIVE DOLLARS ($19,875.00). That while the Supreme Court has directed that the Court find the value of the marital assets, by reason of the diversity of opinion of the outfitting business from ONE HUNDRED SIXTY-ONE THOUSAND DOLLARS ($161,000.00) on the high side to NINETEEN THOUSAND EIGHT HUNDRED SEVENTY-FIVE DOLLARS ($19,875.00) on the low side, and nothing in between for the Court to arrive at an evaluation, the Court is not going to value the entire marital assets including the outfitting business but shall distribute the same in accordance with what the Court believes is an equitable distribution considering all of the various factors.
>
> "19. That the Court accepts the higher value of the business assets presented by the Petitioner totalling FIFTY THOUSAND DOLLARS ($50,000.00), but rejects additional values placed on incalculable variables like 'life style.'"

It is obvious that the husband took his statement out of context in an attempt to find a basis for his appeal. A reading of the findings of fact as a whole, clearly indicates that all of the marital assets with values were considered by the court in reaching an equitable distribution of the marital estate. The court specifically set forth the values as to each major item of marital property and even set forth the most minor items down to the degree of establishing a five dollar value for a magazine rack in finding no. 9.

It is clear that the language used by the District Court in finding no. 18 concerns a specific evaluation of the family business. Here, the District Court valued the

business on the basis of the value of its assets and not as a going concern. The court established the value of the assets at $50,000. This value favored the husband by lowering the value on the assets distributed to him over the $161,000 figure the wife had established.

As previously noted in reaching its evaluation, the court heard the testimony of (1) the wife; (2) the bookeeper of the business; (3) the husband who operated the business; (4) Robert Arnaud, an experienced outfitter who had worked with the assets; (5) Denise Hassel, a daughter of the parties, who prepared the audit on the assets for insurance purposes; and (6) James Walmo, an experienced outfitter. Obviously there was abundant evidence before the court to establish its evaluation of the business. No error was made by the court's statement in instruction no. 18.

Issue two concerns the major assets and how they were divided. This issue ties in with the first issue. As previously noted, the court had considerable evidence to make a decision on the distribution of those assets. The court did so in such a manner as to provide for the husband's continued operation of the outfitting business. The income figures testified to would not only take care of his needs, but care for the maintenance of his ex-wife. The court, as best it could, determined the profitability of the hunting business based on the previous years and the reservations made for the 1984-85 hunting season. While the husband did not receive what he wanted, his contention that the division of the marital assets was erroneous and inequitable is without merit.

This Court in numerous cases has set the standard of review in marital distribution cases. In Re the Marriage of Osteen (Mont. 1985) _____ P.2d _____, 42 St.Rep. 522; Vert v. Vert (Mont. 1984), 680 P.2d 587, 41 St.Rep. 895; In Re

6

Marriage of Thompson (Mont. 1984), 676 P.2d 223, 41 St.Rep. 237; Cameron v. Cameron (1978), 179 Mont. 219, 587 P.2d 939. In Thompson, supra, we stated:

> "The standard of review of a district court ruling as set forth in our Rule 52(a), M.R.Civ.P., as follows:
>
> "'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" Thompson, 676 P.2d at 225.

We conclude the findings of fact and conclusions of law are not clearly erroneous

The final issue raised by the appellant addresses the court's award of maintenance to the wife. The husband alleges the maintenance places a financial burden upon him that he is unable to comply with.

The award of maintenance always places a financial burden on the supporting spouse. Here, the wife is fifty-seven years of age. She suffers from serious medical problems which require continual medical treatment and medication. She even lacks a high school education that might otherwise open job opportunities for her. The husband, on the other hand, is engaged in an outfitting business. Over a four year period, the business has earned a net income of $15,376 per year. Most business expenses including gas, food, clothing, insurance and vehicle maintenance were claimed by him. The husband was awarded the business property. The wife was awarded the house and one acre which surrounded it. Although the house is a valuable asset, it is not an income producing asset. Therefore, it was necessary for the court to award $500 per month maintenance to meet the wife's needs. We find the District Court did not err for failing to amend its findings of fact and conclusions of law as requested by the husband's motion to amend. Rule 59(a),

M.R.Civ.P., provides the ground for a new trial. The rule states that the movant must "state with particularity, the grounds therefore." Here the sole basis of the husband's motion for a new trial was that the respondent-husband was "not in good health." None of the statutory requirements for a new trial were presented, nor was the health of the husband raised as an issue until he filed a counterclaim on March 9, 1984. He failed to produce any evidence at trial that would establish poor health and this is, in our opinion, a specious allegation at this point.

The wife argues that the appeal here is frivolous and that under Rule 32 Montana Rules of Appellate Civil Procedure the appeal by the husband is frivolous because: (1) it is taken without substantial or reasonable grounds; and (2) it is taken for the purpose of delay. While there may be some merit to her argument, in view of the issue raised by the appellant, we will not assess damages against the husband.

The judgment of the District Court is affirmed.

Justice

We concur:

Chief Justice

Justices